**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CALIFORNIA SCHOOL OF PROFESSIONAL PSYCHOLOGY, Respondent.**

**No. 77–2162.**

United States Court of Appeals, Ninth Circuit.

Oct. 12, 1978.

---

Patrick Szymanski (argued), Washington, D.C., for petitioner.

E. Garth Black (argued), of Cooper, White & Cooper, San Francisco, Cal., for respondent.

Before KILKENNY and CHOY, Circuit Judges, and EAST,* District Judge.

CHOY, Circuit Judge:

The National Labor Relations Board petitions for enforcement of its order affirming an administrative law judge's determination that the California School of Professional Psychology (the School) committed an unfair labor practice. The violation was held to be of § 8(a)(1) and (3) of the National Labor Relations Act (the Act), 29 U.S.C. § 158(a)(1), (3), by failing to renew the teaching contract of Dr. Michael Cohen because of his union organizing activities. We deny the petition.

## I. The Case

Dr. Michael F. Cohen taught at the California School of Professional Psychology pursuant to several successive employment contracts. Over time, tension developed between Cohen and the School administration because of Cohen's efforts to unionize teachers. On July 23, 1975, the School sent Cohen a letter that read in part:

> This is to advise you that your faculty contract expires August 31, 1975. As this concludes your services at [the School], I wish to thank you for all of your positive contributions to . . . the School.

Cohen testified that this letter constituted "the first formal notification" that he would not be rehired. On February 12, 1976, Cohen filed an unfair labor practice charge with the Board. The Board adopted the findings of an administrative law judge that the School terminated Cohen because of his union organizing activities in violation of § 8(a)(1) and (3). The Board ordered reinstatement with back pay.

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

The School contests enforcement of the order on the grounds, first, that relief is barred by the six-month limit for filing charges with the Board provided by § 10(b) of the Act, 29 U.S.C. § 160(b), and second, that the Board erred on the merits. We find that the action is barred by § 10(b), and thus do not address the substantive issues.

## II. § 10(b)

Section 10(b) provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge." The School contends that the alleged unfair labor practice of not rehiring Cohen because of his union activities occurred, if at all, when Cohen was formally notified by letter that he would not be rehired. Because Cohen filed his charge with the NLRB more than six months after receipt of the letter, the School argues that the charge is time barred. The Board contends that the unfair labor practice did not occur until Cohen's earlier teaching contract expired and Cohen ceased teaching at the School. Cohen filed his charge within six months of the time he ceased teaching at the School.

■ The rationale for limitations periods is to encourage persons promptly to file legal claims in order to prevent unfair litigation on stale and forgotten matters. *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 554, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974); *Order of Railroad Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 348–49, 64 S.Ct. 582, 88 L.Ed. 788 (1944). We have recognized, therefore, that the time limit of § 10(b) should begin running when the employee can first file an unfair labor practice charge to protect his interests. In *NLRB v. Local 30, International Longshoremen's & Warehousemen's Union*, 549 F.2d 698 (9th Cir. 1977), a former union member filed an unfair labor practice charge against his former union, claiming that the union had imposed an unlawful penalty. We held that the six-month period of § 10(b) began running when "the laborer was in a position to file

the unfair labor practice charge, i. e., upon receipt of the notice of the penalty." *Id.* at 701.

Although this court has not yet applied the *Local 30* approach to an unfair labor practice charge under § 8(a)(3), the Second Circuit adopted a like view in a case very similar to the present one. In *Nazareth Regional High School v. NLRB*, 549 F.2d 873 (2d Cir. 1977), Mirrione, a private school teacher, was not rehired by the new operators of the school at which he taught, allegedly because of his union activities. On June 13, 1974, the school formally notified Mirrione that he would not be re-employed. On August 31, 1974, Mirrione's prior contract expired and he was not rehired. The union filed charges under § 8(a)(3) within six months of the contract expiration but more than six months after notification by the letter. The Board found that Mirrione had not been rehired because of his union organizing activities in violation of § 8(a)(3). The Second Circuit held, however, that § 10(b) barred the action:

> The issue is whether Mirrione could have filed an unfair labor practice charge at any time after the final rejection of his application for re-employment. [citation omitted] The action taken by Nazareth on June 13 was not tentative but a final decision not to hire Mirrione for the coming school year and any alleged unfair labor practice under § 8(a)(3) would have to be filed with the NLRB within six months of that event. No reason appears why Mirrone [*sic*] could not have done so.

*Id.* at 882.

■ Because *Nazareth Regional High School* applies the doctrine of *Local 30* in the § 8(a)(3) context, we adopt its rationale. In the present case as in *Nazareth Regional High School*, the School's letter of July 23 was an unequivocal statement that Cohen would not be rehired. Because he could have first filed his unfair labor practice charge at that point, the six-month period of § 10(b) began running upon receipt of that letter.

The Board contends that the decision not to rehire Cohen was not final until the prior contract expired, because the School could have changed its decision or Cohen could have invoked his contractual grievance procedure. But this confuses the unfair labor practice in issue—the decision not to rehire—with the date Cohen's teaching duties ceased. One purpose of § 8(a)(1) and (3) is to deter employers from using hiring and firing decisions to discourage assertion of employees' rights under § 7 of the National Labor Relations Act, 29 U.S.C. § 157, including the right to unionize. *NLRB v. Exchange Parts Co.,* 375 U.S. 405, 408–09, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964). The employer's clear statement that it will not rehire a union activist can discourage union activity by employees fearful for their jobs; the particular date set for termination to take effect is of little importance. Thus, that Cohen continued to work under his old contract did not diminish the potential deterrent effect of the School's allegedly improper termination decision.

Moreover, the School's later decision to rehire Cohen would not dispel the unfair labor practice. Though such conduct might make some issues moot (*e. g.,* recovery for wages for the period following reinstatement), the original improper decision and sending of the letter, with their potential for deterring union activity, would nonetheless warrant filing a charge. *See International Union of Electrical, Radio & Machine Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 234–35, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976).

Finally, the Board argues that in Title VII discrimination cases the limitations period does not begin running until the contested job is otherwise filled. But this analogy fails. Title VII is intended to prevent the hiring of nonminorities undertaken as discrimination against minorities. Accordingly, "[t]he alleged unlawful employment practice [as defined by Title VII] is not complete until the position is filled and no longer available to the claimant." *Gates v. Georgia-Pacific Corp.,* 492 F.2d 292, 294–95 (9th Cir. 1974). In contrast, the harm against which § 8(a)(1) and (3) is aimed—deterrence of labor activity—may begin immediately after the employer communicates its decision not to rehire the union activist, regardless of who later replaces him.

Because Cohen could have filed his claim as of the date of receiving the letter of termination, the limitations period of § 10(b) began to run on that date. Cohen did not file his charges within the six months prescribed. The Board was without jurisdiction to issue a complaint and therefore,

We deny the petition to enforce its order.