Edwin O. ABIA–OKON, M.D., Petitioner,

v.

DISTRICT OF COLUMBIA CONTRACT APPEALS BOARD, Respondent.

No. 92–AA–709.

District of Columbia Court of Appeals.

Argued Jan. 5, 1994.
Decided Sept. 12, 1994.

---

Edwin O. Abia–Okon, petitioner pro se.

Edward E. Schwab, Asst. Corp. Counsel, with whom John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for respondent.

Before TERRY and FARRELL, Associate Judges, and PRYOR, Senior Judge.

TERRY, Associate Judge:

The District of Columbia Contract Appeals Board dismissed petitioner's claim for damages against the Department of Human Services (DHS) because of his failure to comply with an order requiring him to answer a series of interrogatories. Petitioner urges us to reverse the Board's order on the ground that many of the interrogatories propounded by DHS were improper. In addition, he contends that the Board violated its own rules by dismissing his claim without first providing him with notice and an opportunity for a hearing. We hold that the Board's own rules require, at a minimum, that it afford parties an opportunity for a hearing before dismissing an appeal for failure to comply with a discovery order. We therefore reverse the Board's final order and remand the case for further proceedings.

I

On October 3, 1988, petitioner Edwin Abia–Okon, a medical doctor, entered into a one-year employment contract with DHS, under which he was to provide medical services at a facility operated by the Alcohol and Drug Abuse Administration. Barely five weeks later, on November 9, the contracting officer for DHS terminated the contract on the ground that the termination was "for the

convenience of the District of Columbia government." [1]

Thereafter Dr. Abia–Okon and DHS entered into settlement negotiations, in accordance with the terms of the contract and 27 DCMR § 3708.1 (1988). These negotiations lasted almost six months but ended after DHS made a final offer to pay Dr. Abia–Okon $845 as reimbursement for his attorney's fees. Dissatisfied with this offer,[2] Dr. Abia–Okon appealed to the Director of the Department of Administrative Services (DAS), arguing that DHS had terminated the contract in bad faith.

After attempts to resolve the dispute through mediation had failed, the Director of DAS ruled that DHS had indeed terminated Dr. Abia–Okon's contract in bad faith and ordered him to file documentation supporting his claim for damages. About a month later, however, after reviewing the claim, the Director of DAS concluded that Dr. Abia–Okon had not "established that any losses were suffered as a consequence of the breach."

Dr. Abia–Okon then appealed to the Contract Appeals Board ("the Board"). In his appeal papers he asserted that DAS had erred in concluding that he had not suffered any losses as a result of the District's wrongful termination of the contract. Specifically, he alleged:

[T]he breach of the said contract resulted in damages (loss of profit) because I had already committed that time span to serve the District. When the District breached the said contract, try as I did, I could not secure another job or participate in any profit-making enterprise during the contract period. *The undisputed evidence for this is my tax return for that period (copy attached).* [Emphasis in original.]

In its answer DHS offered several defenses to Dr. Abia–Okon's claim, including an allegation that Dr. Abia–Okon had failed to mitigate his damages after the contract was terminated.

---

1. The contracting officer of each agency has authority to terminate a contract on this ground under section 19 of the District of Columbia Government's "Standard Contract Provisions," which are deemed to be included in all government-related supply and services contracts.

2. Dr. Abia–Okon had proposed a settlement figure of $54,820, representing the unpaid balance due him under the contract.

On September 19, 1991, after yet another unsuccessful attempt to settle the dispute, DHS served its first set of interrogatories on Dr. Abia–Okon, along with a request for production of documents. The interrogatories consisted of twenty-four separate questions with numerous subparts and inquired about a wide range of subjects. In support of its mitigation defense, DHS posed a series of questions relating to Dr. Abia–Okon's attempts to obtain either alternative employment or unemployment compensation after the termination of his contract with DHS. Several other interrogatories asked about possible additional sources of income in 1988 and 1989, such as real property interests, bank account activity, and income from gifts and trusts. DHS also asked him to submit copies of his 1988 and 1989 federal and local income tax returns. Finally, DHS inquired about (1) the identity and income of other members of Dr. Abia–Okon's household in 1988 and 1989, (2) an allegation made by Dr. Abia–Okon that employees of the District of Columbia government had made harmful allegations about his qualifications as a medical professional, (3) all expenses incurred by Dr. Abia–Okon in 1988 and 1989, and (4) Dr. Abia–Okon's understanding of various provisions of the contract.

Dr. Abia–Okon submitted his responses to the interrogatories and the requests for documents on December 18. DHS then filed with the Board a motion to compel further discovery, asserting that, "for the most part, [Dr. Abia–Okon's] responses are incomplete and in many cases totally unresponsive to the interrogatories and document requests posed. . . ." The Board denied this motion, reasoning that while Dr. Abia–Okon's answers "may not be as complete and comprehensive as [DHS] would like, the Board can find no prejudice to [DHS's] preparation of its case."

DHS moved the Board to reconsider its denial, arguing that more complete answers to the interrogatories were necessary before it could prepare its mitigation defense. On February 18, 1992, the Board denied DHS's motion for reconsideration, but made the following observation:

[I]n all honesty, the Board is sympathetic to the concerns of [DHS] in its dealings with an uncooperative, *pro se* appellant. However, the Board strongly believes, based on the record of this case, [that Dr. Abia–Okon] will remain uncooperative and that discovery in this matter, if allowed to continue as requested, will conceivably continue into perpetuity.

In the same order, the Board directed Dr. Abia–Okon to "contact government counsel *immediately* in order to facilitate the scheduling of a hearing on this matter and to provide [DHS] with a way to contact him in a manner other than through the mail" (emphasis in original). The Board further warned that any failure by Dr. Abia–Okon to cooperate with these instructions would enable DHS "to file the appropriate motion to dispose of this case in a final manner." Finally, the Board ordered both parties to notify the Board in writing by February 25 of a mutually agreeable date on which to hold a hearing.

On February 26 DHS filed with the Board a motion to dismiss, stating that Dr. Abia–Okon had violated the Board's order by failing to contact counsel for DHS. In response Dr. Abia–Okon stated that he had left several messages for counsel which were never returned. Declaring its aversion to dismissing claims on technical grounds, the Board on March 11 denied the motion to dismiss and scheduled a hearing for May 6. The Board also ordered Dr. Abia–Okon to "answer *in full*" (emphasis in original) the remaining interrogatories and to submit copies of the requested tax returns, or else it would consider dismissing his claim with prejudice.

On April 17 Dr. Abia–Okon filed his revised responses to DHS's discovery requests. He also submitted a pleading entitled "Answer to the Board's Order of March 11, 1992," in which he reiterated his objections to the interrogatories as irrelevant and an invasion of privacy.

DHS then filed another motion to dismiss, this time on the ground that Dr. Abia–Okon had failed to comply with the Board's order of March 11. In the motion DHS asserted that "not only are the responses for the most part non-responsive to the posed questions,

[but Dr. Abia–Okon] has failed to comply with the Board's order to submit to the Board and [DHS] his federal and state tax returns, including all schedules for the years 1988 and 1989." Because of this alleged non-compliance with the Board's order, DHS maintained that it was unable to prepare its mitigation defense in an adequate manner. Dr. Abia–Okon filed a response stating that he had complied with the discovery requests to the best of his ability. He further claimed that he had submitted copies of all tax returns which he had in his possession, and that he had ordered, but not yet received, the remaining returns from the Internal Revenue Service.

On May 12 the Board issued its final opinion and order. Finding that Dr. Abia–Okon had failed to give responsive answers to many of the interrogatories propounded by DHS and had also failed to produce his 1988 and 1989 tax returns as ordered, the Board dismissed Dr. Abia–Okon's claim with prejudice, pursuant to its own Rule 126.1.[3] Dr. Abia–Okon then filed the instant petition for review.

## II

Before this court, Dr. Abia–Okon contends once again that several of the interrogatories propounded by DHS were overbroad, invasive, and irrelevant, and that the Board was required to provide him with notice and a hearing before granting DHS's motion to dismiss. Because we agree with Dr. Abia–Okon's second argument that his procedural rights were violated, we remand this case to the Board so that it may hold a hearing. We therefore need not address Dr. Abia–Okon's first argument, except to note that on re-

mand the Board is free to re-examine the relevance and possible intrusiveness of any unanswered interrogatories.

■ This court must uphold an agency's application of its own rules and regulations unless that application is clearly erroneous or inconsistent with the rules themselves. *E.g., Bowles v. Seminole Rock & Sand Co.,* 325 U.S. 410, 413–414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945); *McCulloch v. District of Columbia Rental Housing Commission,* 584 A.2d 1244, 1249 (D.C.1991); *Levy v. District of Columbia Board of Zoning Adjustment,* 570 A.2d 739, 746 (D.C.1990). Our task in this case is to determine whether the Board adhered to its own rules, which, as validly promulgated and unchallenged regulations, have "the force and effect of law." *Dankman v. District of Columbia Board of Elections and Ethics,* 443 A.2d 507, 513 (D.C. 1981) (en banc). We hold that the Board, by failing to consider all of the rules governing dismissal orders, failed to abide by its overall regulatory scheme.

At the outset, we note that any misapplication of the Board's rules that deal with dismissal orders is not terribly surprising, since the rules contain no fewer than three separate, and somewhat inconsistent, provisions on the subject of dismissals. First, Rule 126.1, on which the Board relied in this case, permits the Board *sua sponte* to sanction a party "as it considers necessary to the just and expeditious conduct of the case" if that party has failed to comply with a Board order or rule or has "engage[d] in unreasonable or vexatious conduct." Here the Board, resorting to the list of sanctions contained in Super.Ct.Civ.R. 37(b)(2),[4] found dismissal to

---

**3.** This rule, published at 36 D.C.Reg. 2699 (1989), states in pertinent part:

> If a party ... fails or refuses to comply with a Board order or rule, or engages in unreasonable or vexatious conduct, the Board may, on its own initiative or on motion of a party, sanction the offending party ... as it considers necessary to the just and expeditious conduct of the case.

In applying this provision to the present case, the Board referred to Super.Ct.Civ.R. 37(b), which lists a range of sanctions which the Superior Court may impose for failure to comply with a discovery order. See note 4, *infra.*

**4.** Rule 37(b)(2) contains an array of sanctions for failing to comply with a discovery order from which a trial court, not necessarily an administrative agency, may choose. Among the sanctions at the court's disposal are (1) resolving factual disputes against the disobedient party; (2) refusing to allow the disobedient party to support or oppose designated claims or defenses; (3) striking pleadings or staying proceedings until the disobedient party complies; (4) holding the disobedient party in contempt; and (5) entering a dismissal or a default judgment, whichever is appropriate, against the disobedient party. We have often held, however, that a court must consider lesser sanctions for discovery violations

be the most appropriate action to take against Dr. Abia–Okon,[5] without considering the other provisions in its rules authorizing dismissals.

We conclude that the Board erred in failing to take into account the other two pertinent rules, especially when each of those rules contains a higher threshold for dismissal than Rule 126.1. For instance, Rule 121.3, part of the section entitled "Dismissal of Cases," provides:

> Whenever either party fails to file documents required by these rules, respond to notices or correspondence from the Board, comply with orders of the Board, or otherwise indicate an intention not to continue the prosecution or defense of a case, the Board may issue an order to show cause why the case should not be dismissed for failure to prosecute or defend. If good cause is not shown, the Board may take appropriate action.

36 D.C.Reg. 2698 (1989). Although this rule does not explicitly require notice and an opportunity to be heard before the Board dismisses a claim, the provision for an order to show cause suggests, at a minimum, that a claimant who fails to comply with a discovery order will ordinarily be given one last chance to explain his non-compliance before dismissal is ordered. The Board's "belief," expressed in its order of February 18, 1992, that Dr. Abia–Okon would "remain uncooperative" and that discovery might "conceivably continue into perpetuity" is not an adequate substitute for a show cause order.

Even more directly relevant are two other rules, which are both parts of a single section entitled "Discovery." Rule 113.2 states:

> If a party, officer, director, or other appropriate person fails to obey an order to provide or permit discovery, the Board may make:

> \*      \*      \*      \*      \*      \*

before imposing the "most draconian sanction" of dismissal. *Shimer v. Edwards*, 482 A.2d 399, 400 (D.C.1984); *accord, e.g., Braxton v. Howard University*, 472 A.2d 1363, 1365 (D.C.1984).

**5.** In its order the Board justified its dismissal of Dr. Abia–Okon's claim as follows:

> (c) An order striking pleadings, staying further proceedings until the order is obeyed, dismissing the case or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

36 D.C.Reg. 2694 (1989). Rule 113.3 states:

> If a party or a party's attorney fails to participate in good faith in the discovery process, after an order by the Board, the Board may, *after notice and the opportunity for a hearing,* administer such sanctions as it deems just and necessary for the administration of justice.

*Id.* (emphasis added).

It is obvious from the Board's final order that it believed Dr. Abia–Okon had acted in bad faith in defying the order to comply with DHS's discovery requests. In pertinent part, the order said:

> [T]he record in this case reveals a clear intention on the part of [Dr. Abia–Okon] to thwart and impede the disputes process. Further, [Dr. Abia–Okon], by evasion and avoidance, has hampered the government's ability to prepare its defense to its claim. Additionally, he has presented no excuse for his failure to cooperate, though given several chances to do so.

But this order did not adequately inform Dr. Abia–Okon that his "failure to cooperate" might result in the dismissal of his claim. We conclude that the Board was obligated to meet the requirements of Rule 113.3, as well as Rule 121.3, before entering its dismissal order. Those two rules, read together, entitle Dr. Abia–Okon to explicit notice that his claim may be dismissed *and* an opportunity to dissuade the Board from taking such action before a dismissal order may be entered.

There is nothing novel about requiring administrative bodies to provide parties with certain procedural safeguards before imposing sanctions against them. As we said many years ago:

> In the instant matter, [Dr. Abia–Okon] has provided no plausible explanation for his lack of cooperation. Consequently, the Board finds that [Dr. Abia–Okon] has failed to cooperate in the disputes process, a situation which, under all of the facts and circumstances, warrants a dismissal.

An administrative agency's power to impose sanctions extends only to those parties before the agency who have been afforded the required procedural guarantees with respect to the agency's proceedings. These procedural guarantees have their roots in constitutional due process, and those due process requirements are met only if a party "was given adequate opportunity to present its position" to the agency involved.

*Ammerman v. District of Columbia Rental Accommodations Commission,* 375 A.2d 1060, 1062 (D.C.1977) (citations and footnote omitted); *see Ridge v. Police & Firefighters Retirement & Relief Board,* 511 A.2d 418, 424–425 (D.C.1986) (summarizing due process requirements in administrative cases); *Carroll v. District of Columbia Department of Employment Services,* 487 A.2d 622, 623 (D.C.1985) ("an individual is entitled to fair and adequate notice of administrative proceedings that will affect his rights, in order that he may have an opportunity to defend his position"); *Babazadeh v. District of Columbia Hackers' License Appeal Board,* 390 A.2d 1004, 1009 (D.C.1978) (vacating suspension order because "the Board's procedures failed to accord petitioner the procedural protection mandated by [statute] and the Board's own regulations"). The proceedings in this case fell short of the minimum requirements of reasonable notice to Dr. Abia–Okon and an opportunity to be heard ("an opportunity to defend his position," as the *Carroll* case puts it) before the Board took final action. *See* D.C.Code § 1–1509(a) (1992) (codifying requirements of reasonable notice and a hearing in all matters before administrative agencies).

Given the case law and the Board's own regulations, we hold that the Board must, at a minimum, provide a party with notice and opportunity for a hearing before dismissing a claim for failure to comply with a discovery order. It is of no consequence that Rules 113.2 and 126.1 do not contain explicit notice and hearing provisions, because Rules 113.3 and 121.3 are also applicable and impose procedural requirements which the Board must follow. Rule 126.1, in particular, must be read in combination with Rules 113.3 and 121.3. The final order of the Board is therefore reversed, and this case is remanded to the Board for further proceedings.

*Reversed and remanded.*