**Glendale C. HOGGARD, Appellant,**

v.

**DISTRICT OF COLUMBIA PUBLIC EMPLOYEE RELATIONS BOARD, Appellee.**

**No. 94–CV–198.**

District of Columbia Court of Appeals.

Submitted Jan. 23, 1995.
Decided March 2, 1995.

Glendale C. Hoggard, pro se.

Bruce A. Frederickson and Linda M. Correia, Washington, DC, filed a brief, for appellee the Public Employee Relations Bd.

Vanessa Ruiz, Corp. Counsel at the time, Charles L. Reischel, Deputy Corp. Counsel, and Sonia Bacchus, Asst. Corp. Counsel, Washington, DC, filed a brief, for the District of Columbia.

Before WAGNER, Chief Judge, and STEADMAN and FARRELL, Associate Judges.

FARRELL, Associate Judge:

Appellant, a former bus driver for the District of Columbia Public Schools (DCPS), appeals from an order of the Superior Court denying his petition for review of two decisions of the District of Columbia Public Employee Relations Board (PERB). Those decisions rejected appellant's claims that the DCPS and the American Federation of State, County and Municipal Employees (AFSCME) had each committed unfair labor practices, D.C.Code § 1–618.4 (1992), the former by allegedly firing appellant for his activities on behalf of his labor organization (AFSCME),[1] the latter by breaching its duty of fair representation in failing properly to challenge appellant's termination. *See, e.g., District of Columbia v. Thompson*, 593 A.2d

---

1. Appellant had also alleged that DCPS denied him the opportunity to supplement his income by participation in field trips and summer employment activities, but he has abandoned these claims on appeal. In any event, they fail for the same reasons we reject the remaining claims of unfair labor practices.

621, 626–27 (D.C.1991), *modifying,* 570 A.2d 277 (D.C.1990), *cert. denied,* 502 U.S. 942, 112 S.Ct. 380, 116 L.Ed.2d 331 (1991).[2]

 On appeal, PERB and the District of Columbia both raise the threshold question whether the Superior Court had jurisdiction to consider appellant's claim as to DCPS because appellant's petition for review appeared limited to challenging PERB's separate order rejecting appellant's claim as to AFSCME.[3] Although the petition for review is not crystalline, we conclude that it sufficiently apprised the Superior Court that appellant was challenging PERB's rejection of his claims of unfair labor practices by both DCPS and AFSCME.[4] We therefore turn to PERB's decisions. We review them *de novo* as if the appeal had been heard by this court rather than the Superior Court. *Public Employee Relations Bd. v. Washington Teachers' Union Local 6,* 556 A.2d 206, 207 (D.C. 1989). We uphold PERB's decision with regard to both DCPS and AFSCME.

**2.** *Thompson* reaffirmed the principle that, under the D.C. Government Comprehensive Merit Personnel Act, D.C.Code §§ 1–601.1, *et seq.* (1992) (CMPA), "[e]mployees dissatisfied with their union's representation may appeal to PERB, and then seek judicial review in Superior Court, if they have a basis for alleging improper conduct." 593 A.2d at 626. PERB has previously ruled, and it is not disputed here, that breach of an employee's right to be fairly represented by the labor organization certified as the exclusive representative for the employee's collective bargaining unit is an unfair labor practice under D.C.Code § 1–618.4(b)(1).

**3.** The District also suggests that PERB's dismissal as to DCPS was not final at the time the petition was filed because appellant's motion to reconsider the dismissal was still pending before PERB. But, assuming *arguendo* that a motion for reconsideration before PERB renders a petition for review premature, PERB's subsequent denial of the motion cured the prematurity. *Cf. Dyer v. Bergman,* 635 A.2d 1285, 1287 (D.C.1993) (citing principle that appellate court jurisdiction over case as to which trial court retained jurisdiction *via* pending motion "will lie … only if the trial court, by the time of our disposition of the case, has in fact ruled upon the pending motion").

**4.** PERB issued its final decision rejecting appellant's claim as to DCPS on May 11, 1992, followed by a corrected copy on May 20, 1992. PERB's decision rejecting the claim as to

### A. DCPS

Appellant was employed by DCPS under temporary annual appointments from 1984 through the school year 1992. In July 1992 DCPS sent him three successive letters informing him of his "non-reappointment" for the school year 1993. All three letters cited as one ground for termination "[t]he employee's performance evaluation." The first and second letters (the second was an "updated copy" of the first) also cited as a reason the "availability of work in the employee's job classification," and the second added the ground, "[t]he employee passing the required physical examination." The final letter, dated July 31, 1992, was a "corrected copy" of the second. It deleted the "availability" ground, retained the "physical examination" ground for termination, and added the third ground of "[t]he employee's ability to receive the appropriate license." All three notices stated that appellant's "last day of employment with the D.C. Public Schools Transportation Branch is September 30, 1992."

AFSCME was issued on June 24, 1993, while appellant still had pending a motion for reconsideration of the May 11 and 20 decisions as to DCPS. It is true that appellant's petition for review stated in its first paragraph that he was challenging "the order of the Public Employee Relations Board issued on the 24th day of June, 1993," which was the sole order he attached to the petition. But the next paragraph of the petition stated:

> **Description of judgment or order:** The Board dismissed in its entirety Petitioner's Unfair Labor Practice complaint *against the DC Public Schools* and the American Federation of State County and Municipal Employees, as untimely filed. The Board never considered Petitioner's Request for Reconsideration of *its dismissal of DCPS as a party,* which was filed eight days prior to the issuance of the Board Order [relating to AFSCME] and sent to DCPS for reply. The Request for Reconsideration asked all proceedings (including the Union's Motion to dismiss) be stayed pending a ruling on the request. [Emphasis added.]

The petition went on to cite the proceedings resulting in PERB's rejection of appellant's claim against DCPS on the ground that the complaint was untimely filed, and asked "the Court [to] find [that] the complaint was timely filed as a matter of law, and [to] remand it to the Board with an Order to conduct a hearing on the allegations in the complaint." It named as parties to the agency proceeding both DCPS and AFSCME.

In his complaint to PERB, appellant challenged all three grounds for the non-reappointment as pretexts for his engaging in union activity. PERB, however, did not reach the merits of the complaint because it dismissed it as untimely filed. PERB found that, despite the partial variation in the grounds cited, appellant had received "unequivocal notice of DCPS' decision" not to renew his appointment in the form of the July letters which he conceded he had received. But appellant had not filed his complaint with PERB until February 1, 1993. PERB therefore dismissed the complaint under PERB Rule 520.4, 37 D.C.Reg. 5288 (1990), which requires "[u]nfair labor practice complaints" to be "filed in accordance with the following requirements: ... (b) If by an individual(s), not later than 120 days after the date the alleged violations occurred. ..."

■ PERB's rule concerning the time for filing exemplifies the principle that "[t]he time limits for filing appeals with administrative adjudicative agencies ... are mandatory and jurisdictional." *District of Columbia Public Employee Relations Bd. v. District of Columbia Metro. Police Dep't*, 593 A.2d 641, 643 (D.C.1991). PERB concluded that the July notices communicating DCPS' decision to end appellant's employment triggered his obligation to file a complaint within 120 days of the alleged unfair labor practice. Alternatively, it concluded that his own admissions established that he learned of his termination when he reported to work on October 1, 1992,[5] and that he still exceeded the 120-day period for filing a complaint (though in that event only by one day). This court defers to PERB's reasonable interpretation of its regulatory authority. *E.g., Washington Teachers' Union Local 6*, 556 A.2d at 210; *Hawkins v. Hall*, 537 A.2d 571, 575 (D.C.1988). *Cf. Abia–Okon v. District of Columbia Contract Appeals Bd.*, 647 A.2d 79, 82 (D.C.1994) ("This court must uphold an agency's application of its own rules and regulations unless

that application is clearly erroneous or inconsistent with the rules themselves.")

■ Decisions in analogous situations arising under the National Labor Relations Act (NLRA) support PERB's view that the time for filing a complaint begins when the employee is informed of the termination decision.[6] Section 10(b) of the NLRA sets forth a similar limitations period for filing complaints of unfair labor practices with the NLRB. In *NLRB v. California School of Professional Psychology*, 583 F.2d 1099 (9th Cir.1978), a teacher had been notified on July 23, 1975, that his faculty contract would expire on August 31, 1975, and that he would not be rehired. Rejecting a contrary determination by the NLRB that the limitations period was not triggered until the contract actually expired, the court concluded:

> [T]he School's letter of July 23 was an unequivocal statement that [the teacher] would not be rehired. Because he could have first filed his unfair labor practice charge at that point, the six-month period of § 10(b) began running upon receipt of that letter.

*Id.* at 1101. In other words, the unfair labor practice in question was the *decision* not to rehire. *Id.* at 1102. In *Teamsters Local Union No. 42 v. NLRB*, 825 F.2d 608 (1st Cir.1987), the court similarly concluded that the limitations period begins to run when "a final adverse employment decision is made and communicated to an employee." *Id.* at 614 (internal quotations and citation omitted). *See also NLRB v. Drywall*, 974 F.2d 1000, 1004 (8th Cir.1992). *Cf. Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (under Title VII of Civil Rights Act of 1964, limitations period for filing discrimination complaint commenced "at the time the tenure decision was made and communicated to Ricks").

■ We hold, in keeping with PERB's decision, that appellant had notice of his non-reappointment by July 31, 1992, which re-

---

**5.** Appellant's complaint to PERB acknowledged that "[h]is employment ended September 30, 1992." A letter he wrote to AFSCME on October 13, 1992, contains repeated references to actions by DCPS on October 1, 1992, that confirmed his non-reappointment.

**6.** In *Hawkins*, this court looked to decisions under the NLRA for guidance in holding that primary jurisdiction to determine unfair labor practice claims lies with PERB. 537 A.2d at 575.

quired him to file his complaint against DCPS within 120 days of that date. In opposing this conclusion, appellant concedes that he received the three notices of termination in July, but argues that the filing period should not be held to have begun until he received his "official personnel form" on November 3, 1992, reflecting the fact of his termination and nonrenewal. PERB rejected this argument, as do we. The Personnel Action form appellant cites specifically states September 30, 1992, as the expiration date of his temporary appointment. The form thus merely confirms the action that had long since been communicated to him. Appellant further points to a collateral determination by an appeals examiner of the District of Columbia Department of Employment Services (DOES) that appellant received written notice from DCPS to take a physical examination on September 4, 1992, and to return to work (following summer vacation) on September 14. From this the appeals examiner inferred (in denying appellant unemployment compensation) that appellant had "reasonable assurance" that his employment would continue during the 1992–93 school year. Appellant's reliance on this determination is mistaken, for we agree with PERB that a collateral DOES determination of "reasonable assurance" of renewed employment [7] cannot control PERB's determination of when a nonrenewal decision was made and communicated to the employee so as to trigger the time for filing an unfair labor practice complaint.

Finally, appellant argues that, at a minimum, the case should be remanded for a

hearing on the timeliness issue, citing PERB's own rule that "[i]f the investigation [of the complaint] reveals that the pleadings present an issue of fact warranting a hearing, the Board shall issue a Notice of Hearing and serve it upon the parties." [8] We agree with PERB, however, that appellant presented no facts sufficient to call in question its finding that he had unequivocal notice of his termination by the end of July. Beyond the notices on which DOES relied, discussed above,[9] the sole evidence appellant presented to PERB that DCPS had rescinded its termination decision, or at least induced him to believe it had done so, was documents supporting his claim that he had "corrected" the deficiencies for which DCPS had terminated him—specifically, proof he had passed a physical examination in August 1992 and obtained a bus operator's license for the school year 1993. Although he did not argue this point to PERB, appellant's contention was apparently that DCPS had accepted, or implied to him that it accepted, these actions as sufficient to remove the grounds for termination, and thus led him to believe through September 30 that it would renew his appointment.

The problem for appellant is that (although represented by counsel at the time) he presented PERB with no such evidence of DCPS's change of heart.[10] In particular, he offered no evidence whatsoever that DCPS found these "corrections" sufficient to address the single ground for termination cited in all three July notices: "The employee's performance evaluation." On the strength

---

**7.** As this court explained in *Davis v. District of Columbia Dep't of Employment Servs.*, 481 A.2d 128, 131 (D.C.1984), "[a] reasonable assurance of reemployment is not a guarantee that one will be rehired...."

**8.** PERB Rule 520.9, 37 D.C.Reg. 5289.

**9.** The notices themselves are not part of the record.

**10.** A scintilla of support for the inference that DCPS might have reconsidered its decision if appellant took certain actions is contained in AFSCME's answer to PERB's interrogatories, in which AFSCME described a meeting in mid-August 1992 attended by appellant and representatives of AFSCME and DCPS, at which AFSCME's representative reportedly "made ar-

rangements with Ronald Flowers [appellant's DCPS supervisor] for another appointment for [appellant] to take his physical examination." And "the question of [appellant's] lack of a commercial drivers license also was mentioned...." These interrogatory answers, however, were submitted by AFSCME *after* PERB had already dismissed appellant's allegations as to DCPS. Nor did appellant rely on them in his motion for reconsideration to PERB, which therefore cannot be faulted for disregarding them. We think, in any event, that this evidence was insufficient to require PERB to hold an evidentiary hearing. See PERB Rule 520.10, 37 D.C.Reg. 5289 (Board "may render a decision upon the pleadings" if investigation "reveals that there is no issue of fact to warrant a hearing").

only of appellant's asserted cure of two deficiencies, PERB was not required to speculate (and on that basis convene a hearing) that DCPS had encouraged these actions in a manner tantamount to revocation of its prior decision.

## B. AFSCME

■ PERB rejected appellant's claim of breach of the duty of representation by AFSCME because "the [c]omplaint fails to state a basis for a claim under the CMPA for which relief can be granted." PERB based this determination on the clear language of the collective bargaining agreement between AFSCME and DCPS which (at the times relevant here) permitted AFSCME to "grieve all discipline and discharge" "[w]ithin ten (10) work days of receipt of . . . notice" of the employer's decision, and further provided that *"[n]o matter* shall be entertained as a grievance hereunder unless it is raised with the other party within fifteen (15) work days after the occurrence of the event giving rise to the alleged grievance" (emphasis added). PERB found in appellant's complaint and the record "no assertion that Complainant sought AFSCME's representation during this period." Given the "incontrovertible circumstances" that appellant had not asked AFSCME to grieve on his behalf during the period set forth in the collective bargaining agreement, PERB concluded that "AFSCME's alleged violative conduct does not amount to a nonfeasance proscribed under the CMPA."

We find no error in this determination. Appellant does not contend that he sought AFSCME's representation in formally challenging the termination before October 7, 1992.[11] PERB, however, construed the collective bargaining agreement to mean that "any representation that AFSCME could have afforded [appellant] had to be undertaken no later than 10 work days after AFSCME received DCPS's July 31, 1992 notice of its decision not to reappoint Complainant."[12] In thus defining the time when any breach of AFSCME's duty to represent would have to have occurred, PERB again exercised its "special competence to deal with such questions," *Hawkins,* 537 A.2d at 575, and we accordingly must defer to its reasonable interpretation of the agreement. The agreement here reasonably admits of PERB's reading which required AFSCME to have invoked the grievance procedures within ten (or, at the outside, fifteen) work days of the final notice of DCPS's decision to terminate. It follows that appellant's failure to seek representation during that time defeats his claim of AFSCME's violation of its duty to represent him.[13]

*Affirmed.*

■

11. At all events, he does not contend that any actions (or failure to act) by AFSCME on his behalf during August or before October 7 amounted to a violation of its duty of representation. Although appellant did contend before PERB that AFSCME failed to protect him with regard to field trip and summer employment decisions by DCPS, see note 1, *supra,* PERB rejected these claims as well, and appellant no longer questions that aspect of its decision.

12. Appellant has not argued that AFSCME did *not receive notice from DCPS* of the decision to terminate him in time to invoke the procedures of the agreement, had it been asked to do so.

13. It is beside the point, therefore, that AFSCME did not reject appellant's request for representation until October 26, 1992, and that (as appellant argues) his filing of the PERB complaint was within 120 days of that event. AFSCME could not have represented appellant except within the terms of the collective bargaining agreement. Indeed, the relatively short time frame for grieving a discharge or other matter which DCPS and AFSCME had agreed upon is fully consistent with the need to adhere strictly to the 120 days in which a complaint of unfair labor practice can be filed with PERB.