Delores M. GIBSON, Appellant,

v.

DISTRICT OF COLUMBIA PUBLIC
EMPLOYEE RELATIONS
BOARD, Appellee.

Nos. 00–CV–371, 00–CV–798.

District of Columbia Court of Appeals.

Argued May 9, 2001.
Decided Nov. 29, 2001.

Mattie P. Johnson, for appellant.

Jeffrey E. Fallon, with whom Bruce A.
Fredrickson and Linda M. Correia, Wash-
ington, DC, were on the brief, for appellee.

Before TERRY and FARRELL, Associate Judges, and MACK, Senior Judge.

TERRY, Associate Judge:

Appellant Gibson, a former employee of the District of Columbia Department of Human Services ("DHS"), appeals from a Superior Court order denying her petition for review of a decision of the Public Employee Relations Board ("the Board" or "PERB"). The Board rejected as untimely appellant's claim that DHS committed an unfair labor practice when terminating her employment and ruled, in addition, that appellant had failed to state a claim against her union. Before this court, appellant argues (1) that her complaint against DHS was timely because she did not receive notice of her right to file a complaint with the PERB and, therefore, that the time for filing a complaint was tolled, and (2) that the PERB ruling that she had failed to state a claim against her union was not supported by the record.[1] We find these claims without merit, and accordingly we affirm the trial court's order.

I

A. *Background*

Appellant was an eighteen-year employee of DHS and was also a member of the American Federation of State, County, and Municipal Employees ("AFSCME" or "the union"). From 1987 to 1997, she worked at the Congress Heights Service Center and served as chief shop steward for the union at that location. On January 13, 1997, appellant received notice that she was being transferred from Congress Heights to the Kennedy Street Service Center because of personality conflicts with co-workers.

On September 9, 1997, appellant received a Letter of Reprimand from Kevin Hill, her supervisor at the Kennedy Street Service Center, after Mr. Hill discovered at least forty unprocessed applications in her desk and file cabinets.[2] A few weeks later, on October 21, appellant received written notice from Jearline Williams, the Director of DHS, proposing to remove her from her position for "inexcusable neglect of duty." Thereafter DHS appointed a disinterested designee to review appellant's case. The designee recommended that appellant receive a thirty-day suspension without pay in lieu of removal and suggested that she "be afforded an opportunity to receive technical assistance in performing her assigned duties."

Notwithstanding that recommendation, on December 16, 1997, appellant received from Ms. Williams a "final notice" of her decision to terminate appellant from her position, effective January 2, 1998. The

---

1. In the second appeal, No. 00–CV–798, appellant asks us to vacate a decision issued by Judge José López on May 9, 2000. Appellant's petition for review was initially assigned to Judge López, but was later reassigned to Judge Herbert Dixon. On March 8, 2000, Judge Dixon entered an order denying appellant's petition for review. On May 9, 2000, Judge López, apparently unaware of the reassignment, issued a second order denying appellant's petition for review on the same grounds. Appellant appealed from both orders, and we consolidated the two appeals.

PERB does not oppose vacating the second order, since it was issued after Judge Dixon had already decided the case on the merits. The issuance of the second order was apparently an inadvertent error. As PERB notes, a remand to vacate the second order is unnecessary because it has no practical effect, and because nothing remains for the Superior Court to do. We shall therefore vacate the second order as duplicative.

2. Mr. Hill later rescinded the letter because it did not comply with internal personnel regulations.

proposed removal was based on appellant's failure to process the applications found by her supervisor. The notice informed appellant of her right to file a grievance within forty-five days from the effective date of her removal, in accordance with the negotiated grievance procedure set forth in her union contract, and, alternatively, her right to appeal from the removal to the Office of Employee Appeals no later than fifteen business days after its effective date. The notice also stated that appellant "must select one of these options for appeal," but it did not mention appellant's additional right to seek review of her removal by filing a complaint with the PERB.

On January 7 and 8, 1998, appellant met with Gwen Jones, the union's shop steward, at the suggestion of Beverly Neal, the president of the union's local chapter. Appellant and Ms. Jones discussed appellant's desire to have the union grieve her removal from her position at the Kennedy Street Service Center. On March 31, however, Ms. Neal informed appellant that the union would not file a grievance.

On May 26, 1998, appellant filed a complaint with the PERB, alleging that DHS had committed an unfair labor practice when it removed her from her position and that the union had committed an unfair labor practice by failing to file a grievance on her behalf. Appellant's initial complaint against the union consisted merely of her statement that she had met with Ms. Jones and that she later learned in a conversation with Ms. Neal and Ms. Jones that the union would not grieve her dismissal. After reviewing the complaint, PERB sent appellant a letter informing her that it was deficient in several respects, one of which was the absence of "a clear and concise statement of the facts constituting the alleged violation, including the date and the place of the occurrence and a citation to the provisions of D.C. Law 2–139 alleged to have been violated." [3] Appellant then filed a supplement to her complaint in which she stated that her removal "was punishment disproportionate to the ... cause of the punishment, and the allegations ... that resulted in her removal were unsupported by the evidence." She emphasized that the disinterested designee and appellant's immediate supervisor had both recommended a lesser punishment. She also reiterated her assertion that the union had violated the CMPA by failing to file a grievance on her behalf.

## B. The PERB Decision

The Executive Director of PERB, Julio Castillo, issued a decision dismissing appellant's complaint because it was "not timely with respect to DHS" and because it "fail[ed] to state a basis for a claim [against her union] under the [Comprehensive Merit Personnel Act]." Mr. Castillo noted that PERB Rule 520.4 imposes a 120–day time limit on the filing of complaints and that, because appellant's complaint was filed 161 days after she received her final notice of removal, it was not timely as to DHS. As for appellant's claim against her union, Castillo stated that a union breaches its duty of fair representation only if "the union's conduct [is] arbitrary, discriminatory or in bad faith, or ... based on considerations that are irrelevant, invidious, or unfair." [4] Since appel-

---

3. D.C. Law 2–139 is the Comprehensive Merit Personnel Act (CMPA), codified as D.C.Code §§ 1–601.1 *et seq.* (1999 & 2000 Supp.), recodified as D.C.Code §§ 1–601.01 *et seq.* (2001).

4. For this proposition, Castillo cited *Roberts v. American Federation of Government Employees, Local 2725,* 36 D.C. Register 1590, Slip Op. No. 203, PERB Case No. 88–S–01 (1989).

lant's complaint "relie[d] solely on the fact that the union failed to file a grievance" and "assert[ed] no basis for attributing a prohibit[ed] motive to the union's failure to file a grievance," Castillo concluded that there was no allegation on which an unfair labor practice claim could be based.

Appellant filed a petition in the Superior Court for review of the PERB decision. The court affirmed that decision for the reasons stated by Executive Director Castillo.

## II

■ Although this is an appeal from a review of agency action by the Superior Court rather than a direct appeal to this court, we review the PERB decision as if the matter had been heard initially in this court. *Public Employee Relations Board v. Washington Teachers' Union Local 6,* 556 A.2d 206, 207 (D.C.1989). The Superior Court must sustain the Board's decision if it is "supported by substantial evidence in the record as a whole and not clearly erroneous as a matter of law." Super. Ct. Civil Agency Review Rule 1(g); *see* D.C.Code § 1–618.13(b) (1999), recodified as D.C.Code § 1–617.13(b) (2001) (Board's factual findings "shall be conclusive if supported by substantial evidence on the record considered as a whole"). We apply the same standard on appeal from a Superior Court review of a PERB decision. *See Washington Teachers' Union,* 556 A.2d at 207.

### A. *Timeliness*

PERB Rule 520.4 provides that an unfair labor practice complaint "shall be filed not later than 120 days after the date on which the alleged violations occurred." 42 D.C. Register 6383, 6389 (November 17, 1995). Appellant admits that she filed her complaint 161 days after receiving the notice of termination, but argues that the 120 days did not begin to run when she received that notice because she did not also receive specific notice of her right to file a complaint with PERB within 120 days. We disagree, and hold that the PERB was correct when it ruled that appellant's complaint was time-barred.

■ We have held that "PERB's rule concerning the time for filing exemplifies the principle that '[t]he time limits for filing appeals with administrative adjudicative agencies ... are mandatory and jurisdictional.' "[5] *Hoggard v. Columbia Public Employee Relations Board,* 655 A.2d 320, 323 (D.C.1995) (quoting *District of Columbia Public Employee Relations Board v. District of Columbia Metropolitan Police Dep't,* 593 A.2d 641, 643 (D.C.1991)). In *Hoggard* we held that the time for filing an appeal to PERB "begins to run when 'a final adverse employment decision is made and communicated to an employee,' " 655 A.2d at 323 (citation omitted), and we specifically rejected the appellant's argument that the filing period should not be deemed to have begun until he received his "official personnel form" reflecting the fact of his termination and non-renewal. *Id.* at 324. Applying the holding of *Hoggard* to this case, we affirm the PERB decision that running of the 120–day PERB filing period began on December 16, 1997, when appellant received "final notice" of her dismissal, regardless

**5.** Appellant cites *Easter Seal Society v. Berry,* 627 A.2d 482, 486 (D.C.1993), for the proposition "that even if the statute in question is jurisdictional, it does not follow that a filing limitation cannot be extended." Appellant takes this quotation out of context, as it deals with the extension of a filing deadline if the final day of the period falls on a Saturday, Sunday, or legal holiday. *Berry* is plainly inapplicable to this case, in which the complaint was not filed until 41 days after the filing deadline had expired.

of whether notice of her right to file a complaint with PERB accompanied that notice.

Appellant argues that PERB's 120–day limitation on filing an unfair labor practice complaint is inconsistent with the right to notice of the grievance process described in the Comprehensive Merit Personnel Act. Specifically, she contends that PERB Rule 520.4 nullifies an employee's rights under D.C.Code § 1–617.53(a) (1999),[6] which states in part:

> The Mayor ... shall issue rules and regulations providing procedures for the prompt handling of grievances of employees.... The grievance system *shall be made known to all employees* and shall provide for an alternative dispute resolution mechanism. [Emphasis added.]

In essence, appellant contends that the phrase "shall be made known to all employees" in this statute requires that notice of the right to file an unfair labor practice complaint with the PERB must accompany a notice of dismissal. We are not persuaded.

■ Appellant's argument fails primarily because the "grievance system" to which this section of the CMPA refers does not encompass unfair labor practice complaints such as the one at issue here. The CMPA specifically defines a "grievance" to include "any matter ... which impairs or adversely affects the interest, concern, or welfare of employees, *but does not include adverse actions resulting in removals ....*" D.C.Code § 1–603.1(10) (1999) (emphasis added), recodified as D.C.Code § 1–603.01(10) (2001); *see also* D.C.Code § 1–617.52(a) (1999) ("[a]n official reprimand or a suspension of less than 10 days may be contested as a grievance pursuant to § 1–617.53"), recodified as D.C.Code § 1–616.52(a) (2001). Thus the allegation that DHS committed an unfair labor practice when ordering her termination was not within the purview of section 1–617.53. Since the "grievance system" in question does not apply to "adverse actions resulting in removals," and since we know of no other statute requiring that notice of an employee's right to seek redress from PERB must accompany a notice of dismissal, we reject appellant's argument that PERB's Rule 520.4 nullifies an employee's rights under the CMPA.

### B. *Failure to State a Claim*

Appellant also contends that the union committed unfair labor practices by (1) failing to file a grievance and (2) failing to inform her of its decision not to file a grievance until after her right to contest her removal through the Office of Employee Appeals or the negotiated grievance procedure had expired. We agree with PERB's conclusion that appellant failed to state a claim against her union.

■ "[W]hile an employee does not have an absolute right to have the union take the grievance to arbitration, the 'union may not arbitrarily ignore a meritorious grievance or process it in perfunctory fashion.'" *Board of Trustees v. Myers*, 652 A.2d 642, 646 (D.C.1995) (quoting *Vaca v. Sipes*, 386 U.S. 171, 191, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)). "Rather, the 'duty of fair representation imposes an obligation for a union to investigate a grievance in good faith.'" *Id.* (quoting *Landry v. Cooper/T. Smith Stevedoring Co.*, 880 F.2d 846, 852 (5th Cir.1989) (other citations omitted)).

Appellant points out that nothing in the record shows that the union took any action to "determine the merits of [her] grievance and whether it deserve[d] the

---

**6.** Recodified as D.C.Code § 1–616.53(a) (2001).

union['s] sponsorship ... [or] to 'process' [her] grievance." She contends that the Board inappropriately assumed that the union's actions in handling the grievance were in good faith and were not arbitrary and that these assumptions had no evidentiary support. Appellant's arguments are not convincing.

■ Simply put, appellant was required to allege in her complaint before the PERB some facts showing "ill motive or arbitrary action to support [her] claim" against the union. *Lewis v. #1 Greyhound Lines–East,* 411 F.Supp. 368, 370 (D.D.C.1976), *aff'd,* 181 U.S.App.D.C. 116, 555 F.2d 1053, *cert. denied,* 434 U.S. 997, 98 S.Ct. 635, 54 L.Ed.2d 491 (1977); *see Vaca,* 386 U.S. at 190, 87 S.Ct. 903 (union's duty to one of its members is not breached unless its "conduct ... is arbitrary, discriminatory, or in bad faith" (citations omitted)). She plainly failed to do so. *See Lewis,* 411 F.Supp. at 370. This requirement is supported by PERB precedent[7] and is consistent with analogous federal case law.[8] Appellant's complaint, even if accepted as true, alleges only that the union did not grieve her termination.

Such an allegation cannot be construed as a claim of an unfair labor practice. As PERB stated in rejecting appellant's complaint, "judgmental acts of discretion in the handling of a grievance, including the decision to arbitrate, do not constitute the requisite arbitrary, discriminatory, or bad faith element of such a violation." PERB Decision at 2, citing *Williams, supra* note 7.

### III

We therefore hold that the PERB decision was supported by the record and was not legally erroneous. Accordingly, in No. 00–CV–371 the judgment of the Superior Court is affirmed. In No. 00–CV–798 the order of May 9, 2000, is vacated; see note 1, *supra.*

*Affirmed in part, vacated in part.*

---

**7.** *See Williams v. AFSCME District Council 20, Local 2290,* 43 D.C. Register 5598, 5599, Slip Op. No. 454, PERB Case No. 95–U–28 (1995); *Roberts, supra* note 4, 36 D.C. Register at 1592.

**8.** This court can look to federal law for guidance in interpreting the phrase "unfair labor practice." *Hoggard,* 655 A.2d at 323.