**In the Matter of A.B.**

No. 82–503.

District of Columbia Court of Appeals.

Submitted Oct. 11, 1984.

Decided Oct. 29, 1984.*

A.K.B., pro se.

Inez Smith Reid, Corp. Counsel, John H. Suda, Principal Corporation Counsel, Charles L. Reischel, Deputy Corporation Counsel, and Michele Giuliani, Asst. Corp. Counsel, were on the briefs, for appellee.

Before MACK and TERRY, Associate Judges, and YEAGLEY, Associate Judge, Retired.

PER CURIAM:

On March 15, 1982, the trial court found that A.B. was a "neglected" child under the provisions of D.C.Code §§ 16–2301(9)(B)–(C) (1981). The child's natural mother, A.K.B., appeals the trial court's subsequent order committing A.B. to the Social Rehabilitation Administration's custody and requests that custody be restored to her. We affirm.

■ Before we begin our review of this appeal, we shall address the jurisdictional questions raised by appellee. Appellee, noting that the Superior Court Neglect Rules do not specifically provide for motions for reconsideration, argues that it is unclear whether appellant's motion for reconsideration tolled the time for appeal since "[t]his court has taken varying positions on whether post-hearing motions toll the appeal time when no trial court or agency rule expressly authorizes such motions." Appellee asks us to compare *In re C.I.T.*, 369 A.2d 171, 172 n. 4 (D.C.1972), with *Totz v. District of Columbia Rental Housing Commission*, 474 A.2d 827, 829 n. 5 (D.C.1984); *United States v. Jones*, 423 A.2d 193, 195 (D.C.1980); *901 Corp. v. A. Sandler Co.*, 254 A.2d 411 (D.C.1969); and *Coleman v. Lee Washington Hauling Co.*, 388 A.2d 44, 47 (D.C.1978). In *Coleman* we held contrary to the holding of *901 Corp.*, which was decided under our former Rule 27(b), that under our current Rule 4 II(a)(2) a timely motion for reconsideration tolls the time for appeal. In *Jones* we simply applied the timeliness element to hold that since the time for appeal had long since passed before the motion for reconsideration was filed, it did not toll the ap-

---

* A memorandum opinion and judgment was originally issued in this case on October 29, 1984, but is being published *sua sponte* by the court.

peal period. In *In re C.I.T.*, we recognized that a motion for rehearing could toll the time for appeal of a final order terminating parental rights. Appellee's argument appears to be, then, that we contradicted ourselves in *Totz*, when we held that "because there were no agency rules providing for motions for reconsideration, the filing period is not tolled." We note, first, that *Totz* is a Rule 15(c) case. Contrary to appellee's reading, we did not find the motion defective because the agency rules did not provide for reconsideration, but because, applying *Jones*, even if the agency had such a rule, the motion was not filed before the time for appeal had lapsed.

■ Appellee also asserts that it is unclear whether, in a neglect case, the appeal time begins to run upon the oral finding of neglect made after the neglect hearing or from the disposition order. Appellee asks us to compare *In re C.I.T., supra*, 369 A.2d at 172, with *In re L.E.M.*, 164 A.2d 345, 349 (D.C.1960). Both make it clear that the appeal time begins running when the final order issues. The only difference between *In re C.I.T.* and *In re L.E.M.* is that in the former the final order was issued orally at the close of trial; in the latter the final order was issued at the disposition hearing held sometime after trial. Here, the final order was, as we said in our September 1, 1982, order, the Superior Court's dispositional order filed April 2, 1982.

Appellant moved for reconsideration on April 12, 1982. It was denied April 30, 1982. Appellant filed her notice of appeal on May 7, 1982. The motion for reconsideration having been filed within 10 days of the final order, and the notice of appeal having been filed within 30 days of the entry of the denial of that motion, the notice of appeal was timely filed under Rule 4 II(a)(2).

■ Appellant was evaluated by psychiatrist Joan Kinlan.[1] Dr. Kinlan testified that in her opinion appellant has been psychotic, *i.e.*, schizophrenic, since 1976 and is in need of psychiatric intervention, medication, and/or hospitalization. She explained that when a mother suffering from this illness is in the acute stage she is often unable to care for the essential physical needs of a child, *i.e.*, to clothe and feed a child. She stated that when the mother alternates, as she was sure appellant did, between being very caring at times and not providing at all for the child at others, such behavior can confuse and distress the child and impair the child's ability to form relationships and trust people. Dr. Kinlan testified that appellant does not recognize that she is ill and refuses the recommended treatment for her illness. She concluded that without treatment, appellant, at this time, is unable to provide A.B. with proper parental care, and will continue to deteriorate.

Preston Moore, an investigator for the Child Protective Services Division of the Department of Human Services (DHS) testified that appellant came to his office on three occasions seeking shelter. He testified that the first time, on September 13, 1981, appellant told him that she could not return to her apartment because there were snakes in it. Moore testified that he accompanied her to the apartment and, after she pried up a baseboard to show him the snakes, he convinced her to stay since he saw no snakes. Several weeks later, appellant returned, and according to Moore, her clothes and those of A.B. were soiled and it did not appear that appellant had brought along any provisions for A.B. Moore testified that when appellant returned again in November, her clothes were "very, very soiled" and A.B. was wet and dirty, and appellant seemed aggravated with A.B. and shook her.

Appellant and A.B. were placed in a temporary shelter after their second visit with Moore, and again after their third visit. At the end of November, they were referred

---

1. Dr. Kinlan's evaluation was based on her review of psychological tests done by Dr. Jensen and the social history prepared by Barbara Na- thanson, a Department of Human Services investigator, as well as her own interview with appellant.

to a Salvation Army shelter. Linda Murray, a Salvation Army employee, testified that after appellant arrived at the shelter she would not feed A.B. and when pressed for a reason, she said it was because on a previous visit the shelter had tried to poison her through the food. Murray also testified that it did not appear that appellant had any food or money of her own, and that later in the evening, appellant refused to accept the Pampers and milk offered her for A.B. The next day, November 31, 1981, A.B. was placed in shelter care, pursuant to court order. On December 2, 1981, appellant was granted twice weekly visitation privileges.

Barbara Nathanson, an investigator for the DHS Child Protective Services division, supervised appellant's visits with A.B. at her DHS office. Nathanson believed that visitation at A.B.'s foster home was unwise because the foster mother could not provide the supervision Nathanson felt was necessary in this case. She testified that during the first visit appellant asked several times if A.B. had been sexually abused and then undressed A.B. completely, examining her from her head to her genital area, spreading A.B.'s buttocks to examine her vagina. Later that day, according to Nathanson, she observed appellant kiss A.B. in the genital area and again completely undress her. Nathanson testified that when she asked what type of fruit A.B. liked, appellant told her apricots and bananas, and added that "she doesn't want anyone putting a banana in the baby's vagina." Nathanson testified that during the second visit, appellant again undressed A.B. to examine her. Nathanson also testified that appellant refused her assistance in locating housing or applying for public assistance or employment.

Appellant insisted on representing herself at trial and took the stand in her own behalf. She testified, *inter alia*, that she was a college graduate and in no way incapable of caring for A.B., and that Dr. Kinlan's report was false and she must have taken a bribe to file it.

On the basis of the record in this case, we are satisfied there was ample evidence to support the trial court's conclusion that the child was shown to be neglected. *In re B.K.*, 429 A.2d 1331, 1333 (D.C.1981).

Accordingly, the order on appeal is hereby

*Affirmed.*