petitioner's motion for reconsideration challenging service of process, it is appropriate for the ALJ, not this court, to rule initially on petitioner's contentions in that motion. If he is dissatisfied with that ruling, he can seek our review of it.

### D.

We, therefore, must reverse as to the first two violations at issue here, K161105 and K161106, for the record does not support denominating them "same violation[s] within 60 days." Accordingly, the maximum fine for violation K161105—as a single violation—is $1,000. Although violation K161106 is likewise described improperly as a "same violation within 60 days," the fine for it was limited to a single violation; thus, petitioner was not prejudiced by the $500 fine he received.[53] We are satisfied, however, that the $2,000 and $500 fines, respectively, for violations K161638 and K161639 are "same violation[s] within 60 days," supported by substantial evidence of record, as they occurred within sixty days of violations K161105 and K161106.

Now to the penalties. Because service of process is duly challenged by petitioner's motion for reconsideration still pending before the ALJ, the question remains: whether petitioner did, or did not, answer the notices of violations K161105 and K161106 within the deadline imposed by the regulations. Until the ALJ revisits the question, it will not be clear whether penalties assessed for those violations are warranted. We can say definitively, however, that even if a penalty is warranted for the K161105 violation, it would not exceed $1,000, given our conclusion that

that violation itself no longer can be considered a "same violation within 60 days."

\*     \*     \*     \*     \*     \*

We, therefore, reverse in part and remand the case for further proceedings, without limitation on OAH to reevaluate the situation in accordance with law, consistent with this opinion.

*So ordered.*

**In re NA.H.;**

**N.H., Appellant.**

**No. 11–FS–1549.**

District of Columbia Court of Appeals.

Argued Jan. 29, 2013.

Decided May 2, 2013.

---

Leslie J. Susskind argued the case for appellant. Caitlin Cavness, Student Attorney, Sadredin Mahmoudi, Student Attorney, and Tanya Asim Cooper, Supervising Attorney, were on the brief.

Stacy L. Anderson, Assistant Attorney General, with whom Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, and Donna M. Murasky, Deputy Solicitor General, were on the brief, for appellee.

Mindy Leon, guardian ad litem for Na. H., filed a statement in support of appellee District of Columbia.

Richard Espovich filed a statement in lieu of brief for the father of Na.H.

Before FISHER, BLACKBURNE-RIGSBY, and THOMPSON, Associate Judges.

FISHER, Associate Judge:

Appellant N.H. asks us to review a ruling that her daughter, Na.H., was a neglected child. However, N.H. did not seek review of the magistrate judge's order by a Superior Court judge until the time for doing so had passed. We therefore affirm the Superior Court's order dismissing the motion for review as untimely, and conclude that the merits of the neglect ruling are not properly before us.

## I. Background

On January 4 and February 1, 2011, Magistrate Judge S. Pamela Gray held a hearing to determine whether appellant's daughter, Na.H., was neglected due to physical abuse, as defined in D.C.Code § 16–2301(A)(i) (2001). On February 1, Magistrate Judge Gray found that the government had proved by a preponderance of the evidence that N.H. inflicted physical injury upon Na.H. beyond what was permitted for parental discipline "reasonable in manner and moderate in degree." D.C.Code § 16–2301(23)(B)(i) (2001). Accordingly, Judge Gray adjudicated Na.H. neglected due to physical abuse.

The court then turned to the question of disposition. At the close of the February 1 hearing, the court issued a disposition order that consisted of handwritten findings on a pre-printed form, and orally explained the findings of fact and conclusions

of law that were the basis for its order. The order, which was entered on the docket that same day, committed Na.H. to the custody of the Child and Family Services Agency (CFSA) for a period not to exceed two years. Magistrate Judge Gray issued additional written findings of fact and conclusions of law on April 28, 2011.

N.H. filed a motion for review in the Superior Court on May 12, 2011, more than three months after the disposition order was entered, but within ten business days after Magistrate Judge Gray issued her written findings of fact and conclusions of law.[1] Superior Court Judge Zinora Mitchell–Rankin dismissed appellant's motion as untimely because it had not been filed within ten days of the magistrate judge's February 1 disposition order. Nevertheless, "for purposes of a complete review," Judge Mitchell–Rankin issued an alternative ruling on the merits, affirming the finding of neglect. Appellant then filed a timely notice of appeal to this court.

## II. Analysis

A. **The time for seeking Superior Court review ran from the entry of the February 1 disposition hearing order.**

■ While magistrate judges may enter "final orders or judgments" of the Superior Court, D.C.Code § 11–1732A (d)(2) (2001), "[s]uch orders or judgments are not final for purpose of review in this court," *Bratcher v. United States,* 604 A.2d 858,

859 (D.C.1992). Instead, "[a]n appeal to the District of Columbia Court of Appeals may be made only after a judge of the Superior Court has reviewed the order or judgment." D.C.Code § 11–1732(k) (2011); *see also Arlt v. United States,* 562 A.2d 633, 635 (D.C.1989) (reiterating that "an order or judgment of a hearing commissioner [now called a magistrate judge] is not directly appealable to this court").

■ In cases of this kind, Family Court General Rule D(e) requires that a motion for review of a magistrate judge's order be filed within ten days, although it permits a twenty-day extension of that period upon a showing of excusable neglect.[2] The relevant date for determining the timeliness of appellant's motion for review by the Superior Court is February 1, when the disposition hearing order was entered on the docket. *In re Ak.V.,* 747 A.2d 570, 573 (D.C.2000) (entry of written disposition order, not oral finding of neglect, started time for noting appeal); *In re A.B.,* 486 A.2d 1167, 1168 (D.C.1984) (time for appeal began to run upon filing of dispositional order in child neglect case).

In both *In re Ak.V.* and *In re A.B.,* a Superior Court judge, not a magistrate judge, conducted the neglect proceedings. Nevertheless, both cases squarely addressed the question of when the order was final for purposes of seeking review, and we clearly held that the disposition order was the final order. Those holdings govern in this context, where we must

---

1. When assigning appellant's motion to a Superior Court judge for review, Judge Zoe A. Bush, Presiding Judge of the Family Court, stated that the motion had been filed "within the ten days allotted to file for review," but did not mention the entry of the neglect disposition order on February 1.

2. D.C. Fam. Ct. R. D(e)(4) provides:
   (4) Extension of time to file motion for review. Upon a showing of excusable neglect

and notice to the parties, the Presiding Judge of the Family Court, or his or her designee, may, before or after the time prescribed by subparagraph (e)(1)(B) has expired, with or without motion, extend the time for filing and serving a motion for review of a magistrate judge's final order or judgment for a period not to exceed 20 days from the expiration of the time otherwise prescribed by subparagraph (e)(1)(B).

determine when the time for seeking Superior Court review started to run. The facts of those cases are also instructive.

In *A.B.*, the trial court found that A.B. was a neglected child on March 15, 1982, and filed its dispositional order on April 2, 1982. Questioning the timeliness of the appeal, the District of Columbia (the appellee) "assert[ed] that it is unclear whether, in a neglect case, the appeal time begins to run upon the oral finding of neglect made after the neglect hearing or from the disposition order." 486 A.2d at 1168. Addressing two prior decisions cited by the appellee,[3] we explained that "[b]oth make it clear that the appeal time begins running when the final order issues." *Id.* In neglect cases, the disposition is the final order. Any lack of clarity in our precedents arose from the fact that sometimes the final order is issued at the close of the neglect trial. In other cases, it is "issued at [a] disposition hearing held sometime after trial." *Id.* In *A.B.*, we held, "the final order was ... the Superior Court's dispositional order filed April 2, 1982." *Id.*

In *Ak.V.*, the court adjudicated the children neglected, then scheduled a disposition hearing for March 6, 1998. 747 A.2d at 572. The hearing was held as scheduled, and, "[b]y order docketed March 9, 1998, the three children were committed to the custody of [the District] for an indeterminate period not to exceed two years with visitation rights for the mother...." *Id.* at 573. The appellant's counsel did not file a timely appeal, but later sought an extension of time for "excusable neglect." On August 27, 1998, the court docketed its "written findings of fact and conclusions of law supporting the January 21, 1998, neglect adjudication." *Id.*

Citing *In re A.B.*, we held that "[t]he rules of appellate procedure require notice of appeal to be filed within thirty days of entry of the disposition order[,]" that is, within thirty days of March 9, 1998, and remanded for a hearing on excusable neglect. Although we noted that "the court's written findings, which should have 'accompanied' the neglect finding, issued seven months after the adjudication of neglect and ten weeks after the disposition order[,]" *id.* at 577 n. 18, no one entertained the notion that the time for appeal did not begin to run until those findings and conclusions were issued.

In the present case, as in *Ak.V.*, 747 A.2d at 573, the disposition order had the immediate legal effect of remanding Na.H. to the District's custody, as well as imposing additional conditions on N.H.'s access to her daughter. Although the February 1 order indicated that additional written findings of fact and conclusions of law would be issued at a later date, nothing in that order suggested that it was contingent upon the issuance of future findings or upon the outcome of later hearings. Indeed, by its plain language, the order took full effect on February 1. *Cf. In re C.I.T.*, 369 A.2d at 172 ("Consideration of the effect of the orders themselves highlights the fallacy of appellant's position. The order of February 14 clearly purported to be a final adjudication terminating and extinguishing any right in appellant to govern or direct the lives of the minor

---

**3.** In *In re C.I.T.*, 369 A.2d 171 (D.C.1977), the biological father appealed from an order terminating his parental rights. We dismissed his appeal as untimely, holding that the time for appeal began to run from February 14, when the order terminating parental rights was entered, "rather than [from] the order dated February 28 continuing the commitments of the minors." *Id.* at 172. *Cf. In re Lem*, 164 A.2d 345, 349 (D.C.1960) ("All that we require is that the party aggrieved appeal within the time allowed from the order which purports to be final.").

children. It did not purport to make this ruling contingent on anything to be done at a subsequent hearing."); *United States v. Fraser*, 330 A.2d 761, 763 (D.C.1975) (for purposes of determining timeliness of government appeal, oral ruling granting motion to suppress in criminal case was final when entered on docket, and written order entered six days later did not renew or extend time for appeal).[4]

■ Nevertheless, appellant insists that she could not be expected to seek review of the disposition order absent access to the more detailed findings of fact and conclusions of law upon which the court's order was based. We disagree. Although additional explanation of the court's reasoning may be useful in drafting a motion for review and supporting arguments, final orders are not always accompanied by detailed explanations. In this case, however, Magistrate Judge Gray had already provided detailed findings and conclusions, both orally and in the written disposition hearing order.[5] *Cf. Fraser*, 330 A.2d at 763 ("the trial court judge made extensive and thorough oral findings and reached legal conclusions on alternative theories"). Appellant and her counsel were present throughout that ruling.[6] If, in a different case, a meaningful review was thwarted by a lack of findings, the parties could seek a remand, asking leave to supplement the motion for review after findings were entered.

Accordingly, appellant's motion for review by the Superior Court was untimely.

## B. Appellant's claims regarding the merits are not properly before this court.

We now turn our attention to the impact of appellant's failure to file within the deadline for seeking Superior Court review. Although some time limits operate to deprive a court of jurisdiction, not all deadlines are created equal. Recent Supreme Court decisions have sought to establish and clarify the distinction between deadlines that are truly jurisdictional and those that are more properly characterized as procedural or "claim-processing rules."

4. Judge Bush's order, see *supra* note 1, did not preclude a ruling that the motion was untimely; that order was meant only to assign the case for consideration by an associate judge. *See* D.C. Fam. Ct. R. D(e)(A) ("Upon receipt of [a] motion [for review of a magistrate judge's order], the Chief Judge, or his or her designee, shall designate an associate judge to act on the motion."). The government had not yet raised an issue of timeliness, and Judge Bush did not mention the February 1 order or purport to decide the issue presented here.

5. Appellant has offered no support for her claim, made for the first time at oral argument, that she did not receive notice of the disposition hearing order entered on February 1. The transcript before us shows that appellant was present and actively participated (personally and through counsel) throughout the February 1 proceedings, which included extensive discussion of Magistrate Judge Gray's findings and the disposition order that was apparently completed contemporaneously. From the trial court's discussion and the written disposition order, there was no mistaking that the court had adjudicated Na.H. neglected and that, accordingly, she would be remanded to CFSA custody.

6. Nor is it fair to suggest that petitioner was abandoned by her counsel. At the end of the February 1 hearing, when asked whether she was "going to come in with a new lawyer," appellant replied, "He can stay." The same attorney remained her counsel of record until March 16, beyond the extended period within which appellant could have sought Superior Court review of the February 1 order, upon a showing of excusable neglect. Indeed, on March 16, counsel filed a "praecipe" verifying appellant's completion of an anger management program.

Unlike statutory deadlines that Congress intended to limit a court's jurisdiction, "[c]laim-processing rules are court-promulgated rules, adopted by the Court for the orderly transaction of its business." *Smith v. United States*, 984 A.2d 196, 200 (D.C.2009) (internal quotation marks omitted). Although they may not deprive. a court of jurisdiction to hear a case, such rules may still be "inflexible," and may require a court's strict compliance where the issue of timeliness has been properly raised. *Eberhart v. United States*, 546 U.S. 12, 19, 126 S.Ct. 403, 163 L.Ed.2d 14 (2005); *United States v. Singletary*, 471 F.3d 193, 196 (D.C.Cir.2006) (assuming that rule governing timeliness of appeals is a claim-processing rule, appeal still must be dismissed because government properly objected to untimeliness). Nonetheless, "failure to object to untimely submissions" may result in "forfeiture of the objection...." *Eberhart*, 546 U.S. at 18, 126 S.Ct. 403; *see also Wilburn v. Robinson*, 480 F.3d 1140, 1147 (D.C.Cir.2007) ("A party indisputably forfeits a timeliness objection based on a claim-processing rule if he raises the issue after the court has issued a merits decision.").[7]

We need not determine whether the time limit before us is jurisdictional in nature because the outcome of this appeal would be the same regardless of its status. *See District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 182 (D.C.1993) (reviewing court should avoid deciding issues that are unnecessary to a case's disposition). Even assuming that Family Court General Rule D(e)(4) is only a claim-processing rule, it surely would be an inflexible one, to be strictly enforced if the issue of timeliness is properly raised.[8] Because the government seasonably raised the issue of timeliness, the Superior Court was required to dismiss the motion for review. *See Eberhart*, 546 U.S. at 19, 126 S.Ct. 403 ("These claim-processing rules thus assure relief to a party properly raising them...."). Judge Mitchell–Rankin's precautionary review of the merits, in the alternative, was therefore a nullity, and

7. Seeking to harmonize its precedent, the Supreme Court has recognized a "third kind of limitation"—"a deadline [that] seeks speed by creating a time-related directive that is legally enforceable but does not deprive a judge or other public official of the power to take the action to which the deadline applies if the deadline is missed." *Dolan v. United States*, —— U.S. ——, 130 S.Ct. 2533, 2538, 177 L.Ed.2d 108 (2010). In *Dolan*, the Court declined to interpret the lower court's failure to meet a statutory deadline as a bar to restitution, even where the deadline was timely invoked. *Id.* at 2537. The court emphasized that interpreting such a deadline as inflexible would frustrate its primary purpose, which was to ensure timely restitution to victims. *Id.* at 2539.

8. We reach this conclusion based on General Rule D(e)(4)'s restrictive language (an extension of time for excusable neglect is "not to exceed 20 days"), and the long history of strict enforcement of deadlines for appeal, *see* *Bowles v. Russell*, 551 U.S. 205, 209 n. 2, 127 S.Ct. 2360, 168 L.Ed.2d 96 (2007) ("[T]ime limits for filing a notice of appeal have been treated as jurisdictional in American law for well over a century.").

Even in the era of claim-processing rules, the time for noting an appeal has been treated as inflexible unless the opposing party has forfeited his objection. For example, the Supreme Court took pains in *Eberhart* to explain why it continued to endorse the outcome of older cases like *United States v. Robinson*, 361 U.S. 220, 229, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960), which dismissed appeals not filed within the deadlines specified in court-promulgated rules, despite the "imprecision" of their description of the rules as "mandatory and jurisdictional." 546 U.S. at 17, 126 S.Ct. 403. The *Eberhart* Court said that *Robinson* "is correct not because the District Court lacked *subject-matter jurisdiction*, but because district courts must observe the clear limits of the [applicable rules of procedure] when they are properly invoked." *Id.*

appellant's attack upon the finding of neglect is not properly before this court. *See* D.C.Code § 11–1732(k) ("An appeal to the District of Columbia Court of Appeals may be made only after a judge of the Superior Court has reviewed the order or judgment.").

### III. Conclusion

The judgment of the Superior Court dismissing the motion for review as untimely is hereby

*Affirmed.*