*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 15-CV-299 & 15-CV-813

BARBARA BREWER, APPELLANT,

v.

07/20/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

DISTRICT OF COLUMBIA OFFICE OF EMPLOYEE APPEALS

and

DISTRICT OF COLUMBIA PUBLIC SCHOOLS, APPELLEES.

Appeals from the Superior Court of the
District of Columbia
(CAP-6579-14)

(Hon. Robert Okun, Trial Judge)

(Argued October 28, 2016                    Decided July 20, 2017)

Barbara Brewer, *pro se*.

*Stacy L. Anderson*, Senior Assistant Attorney General, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for appellee District of Columbia Public Schools.

*Lasheka Brown Bassey,* General Counsel, filed a statement in lieu of brief on behalf of appellee District of Columbia Office of Employee Appeals.

Before GLICKMAN and MCLEESE, *Associate Judges*, and STEADMAN, *Senior Judge*.

STEADMAN, *Senior Judge*: *Pro se* appellant Barbara Brewer (Brewer) sought Superior Court review of an unfavorable order of the Office of Employee Appeals (OEA). The appeal was dismissed because it was filed in the Superior Court beyond the thirty-day deadline of Super. Ct. Agency Rev. R. 1 (a). The issue in this appeal is whether this deadline is inflexible, as the trial court ruled, or whether it may be extended in appropriate circumstances. In *Mathis v. District of Columbia Housing Authority*, 124 A.3d 1089 (D.C. 2015), a decision rendered subsequent to the dismissal in this case, we held that such a deadline in an agency appeal may be subject to equitable tolling. We therefore vacate the order of dismissal and remand the case for further proceedings in the trial court.

## I.      Factual and Procedural History

Brewer was employed by the District of Columbia Public Schools (DCPS) as a teacher and was subsequently terminated. Brewer appealed the termination to the OEA. On June 10, 2014, the OEA dismissed the action for want of jurisdiction on the ground that Brewer was a probationary employee with no OEA appeal rights.

Brewer initially sought review in our court of the OEA dismissal, filing her petition for review with us on July 15, 2014.[1] On August 14, 2014, we issued an order to show cause why the petition should not be dismissed, since the relevant statute, D.C. Code § 1-606.03 (d) (2014 Repl.), required that appeals from the OEA be taken first to the Superior Court. Having received no response, we dismissed Brewer's appeal on September 24, 2014.[2]

In lieu of responding to our show cause order, on August 27, 2014, Brewer attempted to file a motion in the Superior Court asking for an extension of time to

---

[1] Brewer lives in San Francisco, California and almost all of her communications with the D.C. Superior Court and the Court of Appeals were by mail. Had we jurisdiction, the filing in our court would have been timely under D.C. App. R. 15 (a)(2). As DCPS concedes the same is true if the petition had been filed correctly in the Superior Court, since by its own terms the order did not become final until, at the earliest, June 15, 2014.

[2] Our D.C. App. R. 4 (e) provides for mandatory transfer to the Superior Court, with retroactive effect, of a notice of a civil or criminal appeal from the Superior Court that was improperly submitted to our court instead of the Clerk of the Superior Court, as required by D.C. App. R. 4 (a) & (b). However, our D.C. App. R. 15, dealing with petitions for review of agency actions, is silent on the availability of any such transfer. In the federal courts, such a transfer is permitted by statute, and the petition is treated as if filed originally in the transferee court. 28 U.S.C. § 1631 (2012). Before the enactment of the statute in 1982, the federal cases were in conflict as to whether a court had "inherent power" to make such a transfer. *See* Jeffrey W. Tayou, The Federal Transfer Statute: 28 U.S.C. § 1631, 29 S. Tex. L. Rev. 189, 192 (1987).

file a petition with that court. The filing was rejected by the clerk's office because there was no existing Superior Court case on which to extend time. In response, on September 25, 2014, Brewer attempted to file a petition for review for the OEA decision in the Superior Court. On September 30, 2014, this petition was rejected by the clerk's office on the ground that it did not properly show the addresses of the parties. Finally, on October 15, 2014, the revised petition for review was accepted by the Superior Court for filing.

Proceedings then commenced in the Superior Court. The first response from the government did not come until January 14, 2015, when the District of Columbia Public Schools (DCPS) filed a motion for an enlargement of time beyond the thirty-day time limit in Super. Ct. Agency Rev. R. 1 (c) within which to file a notice of intention to intervene. The trial court granted the motion for enlargement of time on February 6, 2015. [3] On February 10, 2015, DCPS moved

---

[3] DCPS filed the notice itself on February 23, 2015. Brewer challenges whether the trial court properly held that DCPS's late filing of its motion to intervene should be allowed "for good cause shown." The trial court understandably was of the view that DCPS's participation in the case, as a real party in interest, was vital and the delay did not prejudice Brewer. We can find no abuse of discretion in this decision.

to dismiss Brewer's petition for want of jurisdiction, which the trial court granted on July 2, 2015. The trial court held that the thirty-day time limit in Super. Ct. Agency Rev. R. 1 (a) within which to file a petition for review is mandatory and jurisdictional, allowing the court no discretion to extend the time. In a brief closing footnote, the trial court stated that even if the thirty-day deadline was not jurisdictional, it would dismiss the appeal on the ground that the time limit for appeal was a mandatory claim-processing rule requiring dismissal if a motion for such dismissal is properly made.

## II.    Timeliness of Petition:  "Jurisdiction"

Super. Ct. Agency Rev. R. 1 (a) reads in relevant part as follows:

> Unless a different time is prescribed by statute[,] an appeal [from an OEA decision] to the Superior Court of the District of Columbia permitted by the Act[] shall be obtained by filing a petition for review with the Clerk of the Civil Division, within 30 days after service of formal notice of the decision to be reviewed or within 30 days after the final decision to be reviewed becomes a final decision under applicable statute or agency rules, whichever is later.

The trial court, in construing the thirty-day limit as "mandatory and jurisdictional," quoted our decision in *Fisher v. District of Columbia*, 803 A.2d 962, 965 (D.C. 2002), where we indeed did note, citing a prior case, that "[t]his limitation [in Super. Ct. Agency Rev. R. 1 (a)] is mandatory and jurisdictional." But that holding has been eroded by subsequent Supreme Court decisions and our own controlling holding in *Mathis.*

We need not repeat here the thorough analysis in *Mathis* of Supreme Court holdings that essentially have held that only deadlines contained in statutes can be "jurisdictional" as opposed to "claim-processing" deadlines contained in court-made rules. Moreover, even a filing deadline contained in a statute, being procedural in nature, is truly jurisdictional only if the legislature clearly so intended. *Mathis*, 124 A.3d at 1101-03.

In *Mathis*, we were construing the deadline contained in our D.C. App. R. 15 (a)(2), which provides, in relevant part: "Unless an applicable statute provides a different time frame, the petition for review [of an agency order or decision] must be filed within 30 days after notice is given, in conformance with the rules or

regulations of the agency, of the order or decision sought to be reviewed."[4]  In *Mathis*, the court was faced with a prior decision of ours that squarely held that this deadline had acquired "the force of a statutory jurisdictional mandate."  *Capitol Hill Restoration Soc'y v. District of Columbia Mayor's Agency for Historic Pres.*, 44 A.3d 271, 277 (D.C. 2012).  However, we concluded that this prior ruling could no longer stand in the face of more recent Supreme Court decisions.  Thus, we said that, "as a claim-processing rule, Rule 15's thirty-day filing deadline is subject to equitable tolling."  *Mathis*, 124 A.3d at 1103.  Whether equitable tolling is appropriate "is a fact-specific question that turns on [] balancing the fairness to both parties."  *Id.* at 1104.  As we further explained, "[w]e have said that 'equity aids the vigilant,' and have indicated that whether a timing rule should be tolled turns on whether there was unexplained or undue delay and whether tolling would work an injustice to the other party," *Id.* (citing *Simpson v. District of Columbia Office of Human Rights*, 597 A.2d 392, 403-04 (D.C. 1991)).  The importance of ultimate finality in legal proceedings is also a factor to be taken into consideration.

---

[4]  The agency decision in *Mathis,* being a contested case, was directly reviewable in our court.  D.C. Code § 2-510 (a) (2016 Supp.).  In the case before us, the OEA order was reviewable in the first instance by the Superior Court because any appeal from a final decision of the District of Columbia Office of Employee Appeals must first be made to the Superior Court of the District of Columbia.  *See* D.C. Code § 1-606.03 (d).

*See Clement v. District of Columbia Dep't of Human Servs.*, 629 A.2d 1215, 1218 (D.C. 1993).

Our D.C. App. R. 15 (a)(2) and Super. Ct. Agency Rev. R. 1 (a) both involve agency appeals with time limit provisions that closely trace each other. There is no legitimate basis to differentiate the two rules and fail to apply to the case before us the holding in *Mathis* that the time limit in D.C. App. R. 15 (a)(2) is not jurisdictional.

### III.    Timeliness of Petition:  "Mandatory Claim-Processing"

Even though time limits not decreed by statute may not be, strictly speaking, "jurisdictional," the Supreme Court has recognized that certain claim-processing rules nonetheless may require a court's strict enforcement, becoming what are termed "mandatory claim-processing rules." *Manrique v. United States*, 137 S. Ct. 1266, 1271-72 (2017).  However, not being jurisdictional, dismissals for

noncompliance with such rules may be forfeited if the party seeking dismissal does not timely raise the issue. *Id.*[5]

Our court took note of this category of mandatory claim-processing rules in its decision in *In re Na.H.*, 65 A.3d 111, 116 (D.C. 2013), which the trial court cited in its footnote setting forth its alternate holding. That case upheld as at least a mandatory claim-processing rule[6] the time limit for a Family Division appeal from a magistrate judge decision to an associate judge set forth in Family Court Gen. R. D (e)(1)(B). DCPS asserts that the principle of that case is controlling here, and not *Mathis*, with its holding allowing equitable tolling of the rule deadline. We do not agree.

---

[5] The requirement for a "timely" motion to dismiss has been described in various other ways, such as whether the party "waits too long to raise the point," *Manrique*, 137 S. Ct. at 1272 (quoting *Eberhart v. United States*, 546 U.S. 12, 15 (2005)), or whether the party "properly" or "seasonably" raised the point, *In re Na.H.*, 65 A.3d 111, 116 (D.C. 2013).

[6] Just as the Supreme Court did in *Manrique*, in *Na.H.* we stated that we need not actually decide whether the rule involved was truly "jurisdictional" rather than a mandatory claim-processing rule since the result would be the same however categorized. The motion to dismiss had been timely made in both cases. *See Manrique*, 137 S. Ct. at 1271-72; *Na.H.*, 65 A.3d at 116.

We need not decide in this appeal whether Super. Ct. Agency Rev. R. 1 (a) is a mandatory claim-processing rule as in *Na.H.*, because, whether or not mandatory, the question of timeliness in the case before us markedly differs from that in *Na.H.* In *Na.H.*, the government's motion to dismiss was clearly timely.[7] *Na.H.*, 65 A.3d at 116. Here, the respondent in the petition for review was the Office of Employee Appeals. Coincident with the successful filing of her petition for review on October 15, 2014, Brewer properly effected service by certified mail upon both OEA and DCPS and personal service on OEA. This petition for review could hardly have come as a surprise to either OEA or DCPS. Brewer had served DCPS through its office of general counsel with a copy of her original filing of the Notice of Appeal in our court on July 15, 2014. A copy of our order to show cause was sent to counsel at OEA, as was our order dismissing the appeal as improperly filed. Brewer served both OEA and DCPS with her August 27, 2014, motion to extend time to file a petition for review and again with her rejected September 25, 2014, petition for review. Nonetheless, following the successful filing of her

---

[7] In *Mathis*, the question of whether the motion to dismiss had been timely raised was not presented as an issue and the court did not address it as a possible limitation on the invocation of equitable tolling. *Mathis*, 124 A.3d at 1098. Nor did the court explicitly address the possibility that the time limit for filing a petition for review of an agency decision might be a mandatory claim-processing rule, even if not strictly speaking jurisdictional.

petition for review, the government took no action whatsoever for three months, notwithstanding the fact that it was well aware of the efforts by Brewer to successfully petition for review. Indeed, the original respondent agency, OEA, never took any steps whatever at any time to challenge the timing of the petition for review. Instead, the first action by the government was the motion by DCPS for enlargement of time, nunc pro tunc, to file a notice of intent to intervene, far beyond the thirty-day period for such intervention in Super. Ct. Agency Rev. R. 1 (c). And in its motion justifying intervention, DCPS said that such intervention would allow the court "to render a decision on the merits."[8] Although this record of delay by the government may very well in itself have constituted a forfeiture of any right to challenge the timeliness of the filing of the petition, we think that this extended inaction must at the very least leave open the possibility of equitable tolling as allowed in *Mathis*. Tit for tat, in this posture, is a fair route to justice.[9]

---

[8] Although the trial court found good cause to allow DCPS's tardy intervention, that does not mean that DCPS should be permitted to belatedly complain about Brewer's prior untimeliness, particularly given the trial court's conclusion that permitting DCPS to belatedly participate would not prejudice Brewer. See *supra* note 3.

[9] Brewer suggests that Super. Ct. Agency Rev. R. 1 (a) already contains a provision authorizing the trial court to extend the filing deadline. She calls attention to Super. Ct. Agency Rev. R. 1 (h), which incorporates certain civil rules "except where inconsistent with [a cited statute] or with this Rule." Included in the

(continued…)

The argument for equitable tolling in this case is compelling. The record shows an unbroken effort by a *pro se* petitioner, operating by mail from her San Francisco, California, address, to properly comply with somewhat arcane filing rules. The original petition was timely filed, but in the wrong court.[10] When, a month later, she was alerted to her error by our show cause order, she promptly sought to file a motion to permit her to late-file in the Superior Court. This motion was rejected for filing on technical grounds by a deputy clerk of the court on a printed rejection slip, as was her subsequent petition. In each case, she promptly acted to correct the asserted error. No prejudice can be seen to flow to either DCPS or OEA. Both entities were fully informed of the various steps being taken by Brewer to appeal the decision. Their ability to challenge the petition was in no

_____

(. . . continued)
list of incorporated provisions is Super. Ct. Civ. R. 6. That rule permits a trial court to extend time "where the failure to act was the result of excusable neglect" and contains no time limit for such action. Super. Ct. Civ. R. 6 (b). We need not here undertake to resolve the interpretation of this Superior Court rule.

[10] DCPS points out that the OEA order explicitly states that an appeal "may be taken to the Superior Court of the District of Columbia." Brewer explains her error by citing to D.C. Code § 11-722 (2012 Repl.). ("The District of Columbia Court of Appeals has jurisdiction . . . to review orders and decisions of . . . any agency of the District of Columbia"), although at oral argument she did not press any claim that the original filing had been in the proper court. In any event, misfiling an appeal in the wrong court is not considered a serious defect. See *supra* note 2.

respect affected by the delayed filing and no claim is made of any fiscal or budgetary impact. No principle of finality is seriously at stake here, and any such consideration is more than offset by the desirability of judicial review of agency action coupled with the government's delay, Brewer's efforts to appeal, and the lack of any prejudice whatever.

Accordingly, we have determined to reverse the order of dismissal and to remand the case to the trial court for further proceedings on the merits.

*Reversed and remanded.*