*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 18-CV-1253

GERALD G. NEILL, JR., APPELLANT,

V.

DISTRICT OF COLUMBIA
PUBLIC EMPLOYEE RELATIONS BOARD, ET AL., APPELLEES,

and

FRATERNAL ORDER OF POLICE/METROPOLITAN
POLICE DEPARTMENT LABOR COMMITTEE, INTERVENOR.

Appeal from the Superior Court
of the District of Columbia
(CAP-839-18)

(Hon. Neal E. Kravitz, Trial Judge)

(Argued June 23, 2020          Decided August 6, 2020)

*Horace L. Bradshaw, Jr.*, for appellant.

*Geoffrey H. Simpson*, with whom *Bruce A. Frederickson* and *Cedar P. Carlton* were on the brief, for appellees.

*Anthony M. Conti*, with whom *Daniel J. McCartin* was on the brief, for intervenor.

Before FISHER and THOMPSON, *Associate Judges*, and WASHINGTON, *Senior Judge*.

THOMPSON, *Associate Judge*:   Appellant Gerald G. Neill, Jr., appeals from a ruling of the Superior Court that (1) affirmed the dismissal by the Public Employee Relations Board ("PERB") of his standards of conduct complaint ("complaint) and (2) denied his demand for a jury trial.  We affirm.

## I.

The factual background of this case is set out more fully in this court's opinion in *Neill v. District of Columbia Pub. Emp. Relations Bd.*, 93 A.3d 229 (D.C. 2014) ("*Neill I*").  The following is a brief summary of the facts pertinent to the instant appeal.

Appellant is a former Metropolitan Police Officer who served as Chairman of the Fraternal Order of Police/Metropolitan Police Department Labor Committee (the "Labor Committee" or the "Union") from 2000 to 2004.  After appellant terminated the Labor Committee's former general counsel, Ted Williams, Mr. Williams sued appellant for alleged breach of contract, tortious interference with contract, and intentional infliction of emotional distress.  Appellant retained

attorney John Berry to represent him in the litigation. Appellant did so without consultation or approval by the Union,[1] and without having asked the Union to provide him with free representation pursuant to Article 17.1 of the Union's bylaws.[2] On July 31, 2001, the Union unanimously passed a motion "to not support or finance the pending lawsuit against [appellant] and others." There is no dispute that appellant became aware of this vote, and that notice of it was given to Mr. Berry, by sometime in 2001.

Several years later, on October 31, 2008, after some of Mr. Williams's claims against appellant had been dismissed and others remanded, appellant sent a "Request for Representation" to the Union asking the Union to pay his legal

---

[1] Mr. Berry remained appellant's counsel in the matter until January 12, 2009, when appellant hired Matthew LeFande to replace Mr. Berry, "again without any consultation with or approval by the Union."

[2] Article 17.1 provides that:

> Every dues paying member in good standing shall receive free of charge and as a matter of right legal representation for the defense of any administrative, civil or criminal action against such officer or sergeant arising from the performance of duty, or from their status as police officers . . . .The LABOR COMMITTEE may provide free legal representation to any member of the bargaining unit for any purpose determined to be appropriate for the furtherance of the goals of the LABOR COMMITTEE and the benefit of its members.

expenses related to Mr. Williams's lawsuit. A few weeks later, on November 18, 2008, Mr. Berry followed up with a letter to the Union's then-Chairman stating that appellant had a right to have his legal defense expenses covered. On December 10, 2008, James W. Pressler, Jr., the Labor Committee's general counsel, responded to Mr. Berry, stating that the Union would not pay appellant's legal expenses or provide him representation.[3]

On November 13, 2009, the trial court dismissed with prejudice all of Mr. Williams's remaining claims against appellant. On January 20, 2010, appellant again wrote to Mr. Pressler, this time through his new counsel, Mr. LeFande, demanding payment of his "reasonable and necessary attorney's fees and other

---

[3] In this correspondence, Mr. Pressler also explained that the claims then remaining in Mr. Williams's lawsuit

> address only Mr. Williams' claims in tort that Mr. Neill's actions towards him were malicious and intentional, and therefore undertaken by Mr. Neill in his individual capacity and interest rather than for the benefit and goals of the Labor Committee. If Mr. Williams is successful, then Mr. Neill necessarily would not be shielded from personal liability based on his status as Chairman of the Labor Committee, nor would he be entitled to legal representation by the Labor Committee. Accordingly, at this time, Mr. Neill does not have a viable claim that the Labor Committee should pay his legal expenses, or that he is otherwise entitled to legal representation from the Labor Committee.

litigation costs incurred by him" in the defense of the Williams litigation.[4] The Union did not respond to the January 20, 2010, letter, did not provide appellant with any legal representation, and did not reimburse him for any of the attorney's fees or costs he incurred to defend against Mr. Williams's lawsuit.

On March 15, 2010, appellant filed his standards of conduct complaint against the Labor Committee with PERB, alleging a violation of the Comprehensive Merit Personnel Act ("CMPA"), specifically D.C. Code § 1-617.03 (Repl. 2016).[5] On February 4, 2012, PERB dismissed appellant's complaint on the ground that it was untimely filed, citing 6B DCMR § 544.4 (PERB "Rule 544.4"), which provides that standards of conduct complaints "shall

---

[4]  At that time, Mr. LeFande asserted that appellant's legal expenses (including fees owed to Mr. Berry) amounted to $244,006.90.

[5]  As we noted in *Neill I*, "[p]ublic sector unions in the District" have a statutory obligation "to certify their compliance with certain standards of conduct, including one obligating them to maintain 'provisions defining and securing the right of individual members . . . to fair and equal treatment under the governing rules of the organization.'" *Id.* at 232 (quoting § 1-617.03(a)(1)). Thus, "PERB has jurisdiction to hear complaints alleging that a recognized union failed to comply with the specified conduct standards[;] [appellant's] complaint alleged such a violation in the [Labor Committee's] refusal to pay for his defense of Williams's lawsuit despite a provision in its bylaws guaranteeing legal representation to union members for the defense of civil actions arising out of the performance of their duties." *Id.*

be filed no later than one hundred and twenty (120) days from the date the alleged violation(s) occurred." *See also Neill I*, 93 A.3d at 232.

On March 1, 2012, appellant filed a Petition for Review with the Superior Court. After the Superior Court dismissed the petition on procedural grounds and after this court eventually remanded the case to the Superior Court, appellant made a jury demand. *Id.* at 233–34, 243. On September 29, 2015, without addressing appellant's jury demand, the Superior Court remanded the case to PERB "for further proceedings to address issues related to the timeliness of [appellant's] standards of conduct claim."

On remand, PERB again dismissed appellant's complaint as untimely, adopting the finding of a PERB Hearing Examiner that Neill should have known by sometime in 2001 that the Union had declined to provide him representation, which is what Article 17.1 of the Union's bylaws addresses. PERB emphasized that this was nine years before Neill filed his standards of conduct complaint, and thus "well outside the 120-day deadline for a standards of conduct complaint."[6]

---

[6] Specifically, PERB found as follows:

> We agree with the Hearing Examiner that Neill should have known the Union declined his request for

(continued…)

PERB also found that there was no continuing violation that would render the complaint timely. Appellant again petitioned the trial court for review. Following the Superior Court's denial of appellant's petition, appellant filed the instant appeal.

---

(…continued)

representation sometime in 2001. Even though Neill retained counsel without consultation or approval by the Union, we adopt the Hearing Examiner's factual finding that on July 31, 2001, the Union passed a unanimous motion not to support or finance the pending lawsuit and shortly thereafter Neill's counsel received a memo informing him of the Union's action. This fact is undisputed. Both Parties agree that a memo, even though undated, was received by Neill after that vote in 2001. These events occurred nine years before Neill filed his standards of conduct complaint, well outside the 120-day deadline.

The 120-day time period for a union member to file standards of conduct complaint begins once that union member has received an unequivocal statement from his union that he will not be represented or have any representation he secures paid for. In this case, the unequivocal statement was the undated memo from the Union Secretary to Neill's counsel in 2001. The memo stated clearly that the Union would not "support or finance the pending lawsuit against the current Chairman G.G. Neill Jr. and others." The Union has not at any point afterwards stated that they would support this lawsuit or provide Neill with representation. The Board adopts the Hearing Examiner's finding that Neill knew or should have known of the alleged violation some time in 2001 when he received the undated memo.

Appellant contends that PERB erred in dismissing his standards of conduct complaint as untimely and that the Superior Court violated his Seventh Amendment rights by rejecting his demand for a jury trial.[7] We address these claims in turn.

## II.

"[W]e review the PERB decision as if the matter had been heard initially in this court." *Gibson v. District of Columbia Pub. Emp. Relations Bd.*, 785 A.2d 1238, 1241 (D.C. 2001). Because "our review of the PERB is limited[,] we 'must sustain [PERB's] decision if it is supported by substantial evidence in the record as

---

[7] Appellant also contends that PERB's "overt advocacy for dismissal of [his] claims" disqualifies it from further acting in "any quasi-judicial capacity." We need not address this claim because our resolution of this matter means that it will not return to PERB for any further action. As for appellant's argument that PERB's advocacy "undermine[s] the assumption that the PERB decided the original controversy impartially when the matter was before it[,]" the short answer is this court rejected appellant's substantially similar argument in *Neill I*. *See* 93 A.3d at 235 (explaining that "an agency presumptively 'must carry the burden of defending its action in any challenge to it' because the 'matters raised in' such a challenge go directly to the agency's authority and to the validity of its decision, which the agency has a substantial interest in defending" and noting that "the CMPA expressly empowers the PERB to litigate the validity of its decisions").

a whole and not clearly erroneous as a matter of law.'" *AFSCME v. University of the District of Columbia*, 166 A.3d 967, 972 (D.C. 2017) (quoting *Gibson*, 785 A.2d at 1241); *see also District of Columbia Metro. Police Dep't v. District of Columbia Pub. Emp. Relations Bd.*, 144 A.3d 14, 16–17 (D.C. 2016) (noting that it is "well-established" that "[t]his court will not easily disturb a decision of the PERB") (quoting *Fraternal Order of Police/Dep't of Corr. Labor Comm. v. District of Columbia Pub. Emp. Relations Bd.*, 973 A.2d 174, 176 (D.C. 2009)). We have "specifically recognized the 'special competence' of the PERB to decide matters entrusted to its expertise." *District of Columbia Dep't of Corrections v. Teamsters Union Local 246* ("*Teamsters*")*,* 554 A.2d 319, 323 (D.C. 1989). "Unless rationally indefensible, a PERB decision must stand." *AFSCME*, 166 A.3d at 972 (internal quotation marks omitted). We must defer to a PERB interpretation unless we can find "compelling indications" that it is wrong. *Teamsters*, 554 A.2d at 323 (quoting *Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 381 (1969)).

**III.**

Appellant argues that while the CMPA may have required him to take his standards of conduct complaint to PERB in the first instance, upon PERB's "refus[al] to hear [the complaint] as it did in 2012, other rights . . . remain implicated, including the right to a jury trial." He also attempts to recast his administrative claim as a "purely contractual dispute over money," and contends that because his claim consists of "a contractual dispute for readily quantifiable monetary damages . . . he has an inalienable right to a jury trial." We agree with the Superior Court that these arguments "lack[] merit."

As we have previously observed, the Council of the District of Columbia (the "Council") "plainly intended [the] CMPA to create a mechanism for addressing virtually every conceivable personnel issue among the District, its employees, and their unions – *with a reviewing role for the courts as a last resort, not a supplementary role for the courts as an alternative forum.*" *District of Columbia v. Thompson*, 593 A.2d 621, 634 (D.C. 1991) (italics added and internal quotation marks omitted). Under the scheme created by the CMPA, PERB has primary and exclusive jurisdiction over standards of conduct complaints,[8] and its

---

[8] *See* D.C. Code § 1-605.02(9) (providing that PERB "shall have the power to . . . [m]ake decisions and take appropriate action on charges of failure to comply with . . . standards of conduct for labor organizations"); *Cooper v. AFSCME, Local 1022*, 656 A.2d 1141, 1143, 1144 (D.C. 1995) (noting that PERB has "exclusive,

(continued…)

decisions are "subject only to review by the courts under well-established principles of administrative law." *Hawkins v. Hall*, 537 A.2d 571, 575 (D.C. 1988). Those well-established principles of administrative law entail review on the agency record, not de novo fact-finding. *See Pub. Emp. Relations Bd. v. Wash. Teachers' Union Local 6*, 556 A.2d 206 (D.C. 1989) (holding that the trial court erred in addressing the issue of whether an unfair labor practice was committed by a school system de novo; it should have instead applied the substantial evidence and clearly erroneous rules to the administrative agency's decision). And, as we have observed, "the benefits of CMPA's administrative procedures coupled with judicial review are substantial" even though there is "one obvious disadvantage of CMPA: the lack of a jury trial option." *Thompson*, 593 A.2d at 635 (citing *Bush v. Lucas*, 462 U.S. 367, 391 (1983) (Marshall, J., concurring)). Thus, a union member "cannot defeat the exclusive jurisdiction in PERB by casting his complaint

---

(…continued)

original jurisdiction to determine whether a particular . . . alleged breach[] of the duty of fair representation is . . . an unfair labor practice[,]" and that said exclusive jurisdiction is operative even if there is an allegation that the Union agreed to undertake representation outside the collective bargaining agreement) (internal quotation marks omitted). We explained in *Cooper* that "whether AFSCME offered Cooper assistance within its collective bargaining agreement or outside it, [any breach] is a claim for a violation of the union's standards of conduct, and complaints alleging standards of conduct violations must be filed with the Board[.]" *Id.* at 1144 (brackets and internal quotation marks omitted)). "[W]here PERB has jurisdiction over a claim, a litigant cannot bypass PERB's jurisdiction by bringing the same action as a common law claim." *Id*

against the union for breach of duty of fair representation in the form of [an action for] common law breach of contract" that would be subject to a jury demand. *Cooper*, 656 A.2d at 1144.

The CMPA's scheme does not violate the Seventh Amendment. In *Granfinanciera v. Nordberg*, 492 U.S. 33 (1989), the Supreme Court explained that "Congress may devise novel causes of action involving public rights free from the strictures of the Seventh Amendment if it assigns their adjudication to tribunals without statutory authority to employ juries as factfinders[;]" *id.* at 51, that "Congress is not required by the Seventh Amendment to choke the already crowded federal courts with new types of litigation or prevented from committing some new types of litigation to administrative species with special competence in the relevant field[;]" and that "[t]his is the case even if the Seventh Amendment would have required a jury where the adjudication of those rights is assigned to a federal court of law instead of an administrative agency." *Id.* at 51 n.9 (quoting *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 455 (1977)).[9]  Applying the same

---

[9] Appellant relies on *Tamosaitis v. URS Inc.*, 781 F.3d 468, 488 (9th Cir. 2015), in which the Ninth Circuit held, in the context of an Energy Reorganization Act whistleblower provision, that where "Congress . . . created a cause of action in an alternative forum should the [agency] fail to comply with [an aggressive timetable for resolving claims,] . . . . the fact that Congress [gave] adjudicatory power to [the agency] in the first instance d[id] not cut away the constitutional

(continued…)

reasoning to the CMPA scheme, we conclude that the Council — having created a statutory basis for standards of conduct claims and having assigned their adjudication to PERB, which has special competence in the field of labor relations but no statutory authority to employ juries as factfinders — was not required by the Seventh Amendment to burden the Superior Court's jury-trial docket with this new type of litigation. Accordingly, we conclude that the Superior Court did not err in declining to afford appellant a jury trial.

**IV.**

This court has explained that the 120-day time period for filing standards of conduct complaints described in Rule 544.4 begins to run when a complainant first becomes aware of the event giving rise to the complaint. *Hoggard v. District of Columbia Pub. Emp. Relations Bd.*, 655 A.2d 320, 323–24 (D.C. 1995) (finding that PERB's 120–day deadline for filing a complaint began to run from the date an

---

(…continued)
right to a jury when the suit move[d] to federal court." *Id.* at 488. Appellant's reliance on *Tamosaitis* is misplaced because the Superior Court is not "an alternative forum" vis-à-vis PERB; PERB is the exclusive forum for standards of conduct claims. *Thompson*, 593 A.2d at 634; D.C. Code § 1-605.02(9).

employee received notice of his non-reappointment, rather than on the later date on which the employee received his official personnel form reflecting termination and nonrenewal, because the form merely confirmed the action that had long since been communicated to the employee). In this case, PERB found that appellant "received an unequivocal statement from his union that he [would] not be represented or have any representation he secure[d] paid for[]" in 2001 through the memorandum sent to his counsel about the unanimous Union vote not to "support or finance the pending lawsuit" against appellant, and that 120-day time period for appellant to file his standards of conduct complaint began at that time. Because appellant did not file his complaint until March 15, 2010, PERB accepted the Hearing Examiner's finding that the complaint was untimely. We will not disturb this conclusion since it is "supported by substantial evidence in the record as a whole and not clearly erroneous as a matter of law." *AFSCME,* 166 A.3d at 972.[10]

---

[10] The Hearing Examiner rejected appellant's suggestion that the Union's July 31, 2001, vote not to "support or finance" the Williams litigation was not unambiguously a vote against supporting appellant in his defense of the suit. We cannot say that the Hearing Examiner's interpretation was "rationally indefensible," *id.*, or find any "compelling indications" that it was wrong, *Teamsters*, 554 A.2d at 323 (internal quotation marks omitted). The record indicates that the Union's vote to withdraw as a co-appellant in the Williams lawsuit was not taken until August 22, 2001, timing that supports the Hearing Examiner's interpretation that the July 31, 2001, vote was not about whether the Union would continue as a party.

Appellant contends that PERB's conclusion that his complaint was untimely was erroneous for several reasons. First, he argues that the Union's failure to provide him with representation constituted a continuous violation. Specifically, appellant asserts that the Union's failures to reimburse him for his legal expenses in response to his requests on October 31, 2008, December 18, 2008, and January 20, 2010, constituted separate and distinct violations of the Union's bylaws, such that the 120-day filing period deadline began to run again at the time of the Union's last refusal. We are not persuaded.

PERB relied upon *Taylor v. FDIC*, 132 F.3d 753, 765 (D.C. Cir. 1997), for the proposition that "a continuing violation is one whose 'character as a violation did not become clear until it was repeated during the limitations period because it is only its cumulative impact . . . that reveals its illegality.'" By contrast, "the mere failure to right a wrong and make [a] plaintiff whole cannot be a continuing wrong which tolls the statute of limitations, for that is the purpose of any lawsuit and the exception would obliterate the rule." *Fitzgerald v. Seamans*, 553 F.2d 220, 230 (D.C. Cir. 1977); *see also Kyriakopoulos v. George Washington Univ.*, 866 F.2d 438, 443 (D.C. Cir. 1989) (noting that a mere "failure to cure any previous breach of contract [falling outside the limitations period] . . . neither constitutes a new breach nor saves [the party]'s claims from operation of the limitations bar"). That

is the circumstance PERB agreed with the Hearing Examiner was present here: PERB remarked that appellant's "attempts for reimbursement were no more than a remedy to his cause of action [for the Union's failure to provide him with free representation, a decision that became apparent in 2001]; not separate and distinct causes of action which would extend the filing limitation."  We discern no error in this reasoning.

Appellant next argues that even if his complaint was not timely filed, recent precedent from both this court and the Supreme Court support a conclusion that the 120-day rule is not jurisdictional[11] and therefore could be (and was) waived or should be tolled on equitable grounds.  The Union urges that the 120-day rule is jurisdictional, citing PERB's longstanding interpretation to that effect, the deference afforded to PERB in interpreting the CMPA and its own regulations, and this court's case law pre-dating the "recent authority [that] calls into question

---

[11] *See, e.g.*, *United States v. Wong*, 575 U.S. 402, 403 (2015) (clarifying that absent clear legislative language to the contrary, "most time bars, even if mandatory and emphatic, are nonjurisdictional"); *Mathis v. District of Columbia Hous. Auth.*, 124 A.3d 1089, 1102, 1103 (D.C. 2015) (holding that "[i]n the absence of a clear statement of legislative intent to make [a] filing deadline jurisdictional . . . th[e] deadline [imposed by D.C. App. R. 15(a)] is not a jurisdictional rule . . . and . . . as a claim-processing rule, [the] filing deadline is subject to equitable tolling" and explaining that "the modern bright[-]line default [rule] . . . is that procedural rules, even those codified in statutes, are nonjurisdictional in character") (internal quotation marks omitted).

whether the PERB's filing deadlines are in fact jurisdictional." *Neill I*, 93 A.3d at 232 n.5.[12]

We conclude that we need not decide definitively in this case whether the 120-day rule is jurisdictional.[13] That is because the result in this case is the same regardless of whether the rule is jurisdictional or instead is a claim-processing rule subject to forfeiture or waiver and equitable tolling.[14] *See District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 182 (D.C. 1993) (confining opinion to issues necessary for disposition of case).

In general, where a mandatory claim-processing rule is "properly invoked [by a party] . . . [it] must be enforced[.]" *Hamer v. Neighborhood Hous. Servs. of*

---

[12] *See, e.g.*, *Gibson*, 785 A.2d at 1241 (finding that PERB's 120-day deadline for filing unfair labor practice complaints is "mandatory and jurisdictional") (quoting *Hoggard*, 655 A.2d at 323); *see also District of Columbia Metro. Police Dep't*, 593 A.2d at 643 (holding that the PERB Rules governing initiation of actions before the Board are jurisdictional and mandatory).

[13] One reason why we decline to do so is that PERB—which should revisit Rule 544.4 in the first instance in light of the fact that "[t]he dividing line between jurisdictional and claim-processing rules has been in flux over the last decade[,]" *Mathis*, 124 A.3d at 1101 — declined in its decision to address whether Rule 544.4 is a claim-processing rule.

[14] We anticipated as much in *Neill I*. *See* 93 A.3d at 232 n.5 ("[A]ssuming the [Union] properly raised the 120-day deadline, the correctness of the PERB's dismissal may not turn on whether the deadline is jurisdictional.").

*Chicago,* 138 S. Ct. 13, 17 (2017); *In re Na.H.*, 65 A.3d 111, 116 (D.C. 2013) (explaining that a claim-processing rule is "to be strictly enforced if the issue of timeliness is properly raised"). The Hearing Examiner found that the Union raised the issue in its answer to appellant's complaint filed on April 5, 2010, and also raised it after it obtained, through discovery, the memorandum advising Mr. Berry about the Union's vote. PERB agreed with the Hearing Examiner's finding that the Union "did not delay in asserting the issue of timeliness." Similarly, the Superior Court found that the Union raised the timeliness issue in motions to dismiss filed on November 19, 2010, and July 26, 2011. We agree with the Superior Court's observation that "[t]here is simply no factual basis on which a waiver could be found." We therefore uphold PERB's disposition.

Finally, we address appellant's equitable tolling argument. The appropriateness of equitable tolling "is a fact-specific question that turns on balancing the fairness to both parties." *Brewer v. District of Columbia Office of Emp. Appeals*, 163 A.3d 799, 802 (D.C. 2017) (internal brackets omitted). "[W]hether a timing rule should be tolled turns on" a variety of factors, such as the benefitting party's vigilance, the presence of "unexplained or undue delay[,]" whether "tolling would work an injustice to the other party," and "[t]he importance of ultimate finality in legal proceedings[.]" *Id.* In *Brewer*, equitable tolling

applied because there was "an unbroken effort by a *pro se* petitioner, operating by mail from her San Francisco, California, address, to properly comply with somewhat arcane filing rules." *Id.* at 804; *see also Mathis*, 124 A.3d at 1105 (applying equitable tolling where *pro se* petitioner "diligently sought" review of the administrative decision against him, and the passage of time had not hampered the agency's ability to defend the case).

PERB did not specifically discuss appellant's equitable tolling claim, but, as already discussed, it adopted the Hearing Examiner's finding that appellant "knew or should have known of the [Union's alleged standards of conduct] violation in 2001." We can therefore discern that PERB shared the Superior Court's assessment that "while the possibly misleading nature of the [Union's] 2008 letter might explain [appellant's] delay in filing his complaint beginning in 2008, it cannot explain why [he] delayed in filing a complaint following his receipt of the memo denying him support in 2001."[15] We affirm PERB's dismissal of appellant's complaint notwithstanding appellant's equitable tolling argument because we agree with the Superior Court that "[t]he 120-day filing period

---

[15] "[W]e will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight Sys.*, 419 U.S. 281, 286 (1974).

therefore cannot be equitably tolled all the way back to 2001, the time at which [appellant's] cause of action accrued."

For all the foregoing reasons, the judgment of the Superior Court upholding the PERB decision is

*Affirmed.*